975 A.2d 975 (2009)
408 N.J. Super. 597
Maria STOECKER, Plaintiff-Appellant,
v.
Mario F. ECHEVARRIA, Echevarria Industries, Inc., Wilfredo Chavez, Alvarro Alonso, and Sandra Londono, Defendants, and
Antonio Gracia, Unicasa Frontier Realty Corp., a/k/a and Succeeded by Century 21 Frontier Realty, and Maira Fernandez, Defendants-Respondents.
Maria Stoecker, Plaintiff-Appellant,
v.
Mario F. Echevarria, Echevarria Industries, Inc., Antonio Gracia, Unicasa Frontier Realty Corp., a/k/a and succeeded by Century 21 Frontier Realty, Maira Fernandez, and Sandra Londono, Defendants-Respondents, and
Wilfredo Chavez and Alvarro Alonso, Defendants.
DOCKET NOS. A-1452-07T2, A-1975-07T2.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 2009.
Decided August 4, 2009.
*979 Kenneth Rosellini argued the cause for appellant (Hallock & Cammarota, L.L.P., *980 Wayne, attorneys; Mr. Rosellini, on the briefs).
Luis J. Amaro, Jr., Hackensack, argued the cause for respondents Antonio Gracia, Unicasa Frontier Realty Corp., a/k/a and succeeded by Century 21 Frontier Realty, and Maira Fernandez (Cole, Schotz, Meisel, Forman & Leonard, P.A., attorneys; Mr. Amaro, of counsel; Mr. Amaro, Cameron A. Welch and Peter E. Lembesis, on the briefs).
Alvaro J. Alonso, North Bergen, argued the cause for respondents Mario F. Echevarria and Echevarria Industries, Inc. (Alonso & Navarrete, L.L.C., attorneys; Mr. Alonso, on the brief).
Peter T. Shapiro, New York City (Lewis Brisbois Bisgaard & Smith, L.L.P.) argued the cause for respondent Sandra Londono.
Before Judges WEFING, PARKER and YANNOTTI.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
In A-1452-07, plaintiff appeals from an order entered by the trial court on October 19, 2007, which quashed subpoenas issued by plaintiff to certain non-parties. In A-1975-07, plaintiff appeals from orders entered on August 2, 2007 and November 8, 2007, which granted defendants' motions for summary judgment. We consolidate and address both appeals in this opinion. For the reasons that follow, we affirm in A-1452-07; and affirm in part, reverse in part and remand for further proceedings in A-1975-07.

I.
Plaintiff was the owner of property in Guttenberg, New Jersey, located at 6813-6817 Polk Street. After plaintiff's husband died, she decided to sell the property, which consisted of a single-story building with industrial space, a two-story building with two residential units, and a small, single-story building that was formerly used as an office.
In December 2001, plaintiff retained Unicasa Frontier Realty Corp. ("Unicasa") to list the property for sale.[1] Unicasa's agent, Antonio Gracia ("Gracia"), presented plaintiff with a listing agreement on December 6, 2001, which she signed. Gracia said that plaintiff sat next to him while he typed all of the information on the agreement and signed the agreement in his office. Plaintiff executed a dual agency agreement thereby acknowledging that Gracia could also act as a dual agent, which permitted him to also represent potential buyers.
Gracia performed a comparable market analysis ("CMA") to determine the value of the property. Gracia listed the property on the Hudson County Multiple Listing Service ("MLS") for $425,000, which he said was the amount that plaintiff wanted for her property, even though Gracia's CMA indicated that the property was worth less.
On January 12, 2002, Mario F. Echevarria ("Echevarria"), offered $350,000 for the property. Previously, Gracia had received two offers for the property, one in the amount of about $310,000 or $315,000, and the other for less than $300,000.
Plaintiff rejected Echevarria's offer and Echevarria increased the offer to $410,000. Plaintiff accepted the offer in writing. *981 Echevarria's offer indicated that he would deposit five percent of the purchase price upon acceptance and another five percent upon the signing of a contract.
Later in January 2002, after plaintiff informed Gracia that she did not have an attorney, Gracia said that he recommended three attorneys, one of which was Sandra Londono ("Londono"). Londono contacted plaintiff and she agreed to represent plaintiff. Londono did not, however, have plaintiff execute a written retainer agreement.
On March 7, 2002, plaintiff signed a copy of the contract prepared by Londono. However, plaintiff alleged that, when she signed the contract, Echevarria had already signed the agreement. Plaintiff also claimed that Londono told her that Echevarria had signed the contract on March 6, 2002, that the contract was fully executed and that Londono had both deposits in an escrow account. She asserted that Londono had informed her that the contract provided that the closing would occur within sixty days and would be null and void if the closing did not occur within that time.
Immediately after signing the contract, plaintiff informed Gracia that there was a fully-executed contract for the sale of the property to Echevarria and that Londono had received Echevarria's deposit. Based on that conversation, and without undertaking an inquiry to confirm the information provided by plaintiff, Gracia filled out a Deposit Accepted by Owner form ("DABO"), which he gave to his supervisor Maira Fernandez ("Fernandez") for signature and submission to the Hudson County MLS. Thereafter, a banner was placed on the "For Sale" sign on plaintiff's property indicating that it was "Under Contract."
The record reflects that on March 7, 2002, Londono provided copies of the contract to Echevarria's attorney, Wilfredo Chavez ("Chavez"). Chavez replied to Londono on March 15, 2002. He advised that the contract was acceptable, subject to agreement upon additional terms that would be included in a rider to the contract, which he had prepared and enclosed for Londono's review. On March 19, 2002, Londono suggested some changes to the rider. Further correspondence was exchanged between Londono and Chavez concerning the rider, specifically with respect to plaintiff's desire to remain in the property after the closing.
A revised rider was prepared in May 2002. Plaintiff alleged that, at the beginning of May 2002, Londono informed her that she had to sign a new contract because the earlier agreement had expired. It appears, however, that plaintiff had been asked to sign the rider to the agreement.
Plaintiff signed that document on May 14, 2002, and Echevarria signed it on May 20, 2002. The rider stated that the closing must occur within forty-five days. According to plaintiff, Londono told her that if Echevarria did not close within forty-five days, the contract would be cancelled and plaintiff would not have to sell.
On June 14, 2002, Londono provided Chavez with two, fully-executed copies of the contract. Londono said that she had received a deposit of ten percent of the purchase price by May 30, 2002. Londono maintained, however, that the agreements were not finalized until June 14, 2002, and plaintiff could have cancelled the transaction at any time prior to that date.
On June 28, 2002, plaintiff called Londono. She said that the forty-five-day period in the contract had expired. Plaintiff assumed that the forty-five days ran from the date that she signed the rider, which was May 14, 2002, but Londono told her that the forty-five-day period ran from *982 June 14, 2002, when the contract was finalized.
Plaintiff again called Londono on August 3, 2002, and told her that she wanted to cancel the agreement. According to plaintiff, Londono advised her that, before the contract could be cancelled, she had to send Echevarria a "time is of the essence" letter. Plaintiff insists that she instructed Londono not to send the letter; however, Londono maintains that plaintiff's son, Michael Stoecker, authorized her to send the letter.
On August 5, 2002, Londono wrote to Chavez and set a "time is of the essence" closing date of August 15, 2002; however, plaintiff refused to close on that date. Echevarria then sent plaintiff a "time is of the essence" letter, setting the closing for September 17, 2002. Plaintiff failed to appear.
Echevarria and Echevarria Industries, Inc. thereupon commenced an action for specific performance of the contract in the Chancery Division.[2] J. Alvaro Alonso ("Alonso") represented Echevarria in that lawsuit. Plaintiff filed a counterclaim demanding that the contract be declared null and void. That matter was tried in July 2003, and on July 25, 2003, the court rendered a decision from the bench.
The court found that, although plaintiff may have signed a contract on March 7, 2002, there was no meeting of the minds at that time because the terms of the rider were still being negotiated. The court determined that plaintiff and Echevarria agreed to the final terms of the contract in mid-June 2002.
The court further found that, despite the provision of the agreement requiring a closing within forty-five days, time did not become of the essence until Londono sent her letter to Chavez on August 5, 2002. However, plaintiff was not ready, willing and able to close on August 15, 2002, the date that Londono set for the closing.
The court further noted that, thereafter, Echevarria sent plaintiff a "time is of the essence" letter which scheduled the closing for September 17, 2002. The court found that Echevarria was ready, willing and able to close on that date but plaintiff was not.
The court concluded that there was a valid agreement between plaintiff and Echevarria and the contract should be specifically enforced. The court entered judgment for Echevarria, which directed that the closing occur on August 15, 2003. Plaintiff did not appeal from the judgment of the Chancery Division, and she transferred title to Echevarria pursuant to the terms of the agreement, as ordered by the court.
On August 10, 2005, plaintiff commenced this action in the Law Division, naming as defendants Echevarria, Gracia, Unicasa, Fernandez, Chavez, Londono and J. Alvaro Alonso (who was improperly pled as "Alvarro Alonso"). Plaintiff alleged that all defendants had violated the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961-1968 (RICO), and were liable for common law fraud. Plaintiff asserted a legal malpractice claim against Londono. She also asserted a claim for professional malpractice and a claim under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20(CFA), against Unicasa and Gracia. Subsequently, stipulations were entered dismissing the claims against Chavez and Alonso.
*983 On September 4, 2007, plaintiff served subpoenas duces tecum upon the New Jersey Real Estate Commission ("NJREC"), the Hudson County MLS, the Guttenberg Planning Board, and the Guttenberg Zoning Board. Unicasa, Gracia and Fernandez filed a motion to quash the subpoenas. The trial court considered the motion on October 19, 2007. The court rendered a decision from the bench and entered an order quashing the subpoenas.
On July 2, 2007, Londono filed a motion to dismiss plaintiff's legal malpractice claim for failing to comply with the affidavit of merit statute, N.J.S.A. 2A:53A-27. The court heard oral argument on the motion on July 30, 2007. On August 2, 2007, the court rendered a bench decision and entered an order granting Londono's motion with prejudice.
On or about September 24, 2007, Unicasa, Gracia, Fernandez, Echevarria and Londono filed motions for summary judgment on the remaining claims in the case. On September 25, 2007, plaintiff filed a motion for summary judgment on the claims asserted against Unicasa, Gracia and Fernandez. The court considered the motions on November 1, 2007. On November 8, 2007, the court entered orders granting defendants' motions and denying plaintiff's motion. These appeals followed.

II.
We turn first to plaintiff's contention that the trial court erred by dismissing her claims against Londono on the ground that plaintiff had not complied with the affidavit of merit statute, N.J.S.A. 2A:53A-27.
The following facts are relevant to our decision on this issue. Plaintiff's complaint was filed on August 10, 2005. Londono filed an answer to the complaint in September 2006, and an amended answer on December 18, 2006. It appears that the trial court had entered a case management order on October 3, 2006, which required plaintiff to respond to discovery by October 24, 2006, and serve her expert reports by November 23, 2006. By July 2007, plaintiff had not provided Londono with discovery or her expert report, nor had she served an affidavit of merit.
On July 2, 2007, Londono filed a motion to dismiss plaintiff's complaint for failure to provide discovery and an affidavit of merit. On July 17, 2007, plaintiff provided responses to Londono's discovery requests. She furnished an expert report written by Cary E. Nurik, Esq. ("Nurik"), which was dated March 7, 2007. Plaintiff also furnished an affidavit of merit prepared by Nurik, which was dated January 30, 2007.
The affidavit of merit statute requires a plaintiff to show "that the complaint is meritorious by obtaining an affidavit from an appropriate, licensed expert attesting to the `reasonable probability' of professional negligence." Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 149-50, 836 A.2d 779 (2003) (citing N.J.S.A. 2A:53A-27; Palanque v. Lambert-Woolley, 168 N.J. 398, 404, 774 A.2d 501 (2001)). The affidavit "must be provided to the defendant within sixty days of the filing of the answer or, for good cause shown, within an additional sixty-day period." Id. at 150, 836 A.2d 779 (citing N.J.S.A. 2A:53A-27; Burns v. Belafsky, 166 N.J. 466, 470-71, 766 A.2d 1095 (2001)). "[T]he plaintiff's failure to serve the affidavit within 120 days of the filing of the answer is considered tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice." Ibid. (citing N.J.S.A. 2A:53A-29; Palanque, supra, 168 N.J. at 404, 774 A.2d 501; Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 247, 708 A.2d 401 (1998)).
If a plaintiff shows that the failure to file a timely affidavit of merit is due *984 to "extraordinary circumstances," the complaint may be dismissed without prejudice. Cornblatt, supra, 153 N.J. at 247, 708 A.2d 401. An attorney's inadvertent failure to file a timely affidavit of merit does not constitute "extraordinary circumstances" sufficient to avoid dismissal of a complaint with prejudice. Palanque, supra, 168 N.J. at 404-05, 774 A.2d 501. An attorney's "carelessness, lack of circumspection, lack of diligence, or ignorance of the law" does not constitute "extraordinary circumstances." Balthazar v. Atl. City Med. Ctr., 358 N.J.Super. 13, 26, 816 A.2d 1059 (App.Div.) (citing Palanque v. Lambert-Woolley, 327 N.J.Super. 158, 164, 742 A.2d 1002 (App.Div.2000), rev'd on other grounds, 168 N.J. 398, 774 A.2d 501 (2001); Hyman Zamft & Manard L.L.C. v. Cornell, 309 N.J.Super. 586, 593, 707 A.2d 1068 (App.Div.1998)).
The doctrine of substantial compliance may be invoked, however, "so that technical defects will not defeat a valid claim." Ferreira, supra, 178 N.J. at 151, 836 A.2d 779 (citing Cornblatt, supra, 153 N.J. at 239, 708 A.2d 401). To warrant application of this doctrine, a plaintiff must show: a series of steps were taken to comply with the statute; general compliance with the purpose of the statute; the defendant had reasonable notice of the plaintiff's claim; a reasonable explanation for plaintiff's failure to strictly comply with the statute; and lack of prejudice to the defendant. Ibid. (citing Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 353-54, 771 A.2d 1141 (2001)).
In Ferreira, the plaintiff served an affidavit of merit eighteen days after the statutory deadline, but before the defendants filed a motion to dismiss. Id. at 148, 836 A.2d 779. The Ferreira Court held that the doctrine of substantial compliance did not apply. Id. at 152-53, 836 A.2d 779. The Court noted that the plaintiff did not take steps within the statutory timeframe to serve the affidavit on opposing counsel, and counsel's carelessness in failing to file a timely affidavit did not constitute "extraordinary circumstances." Ibid. The Court held, however, that because the defendants waited until after they received the affidavit to file their motion to dismiss, they should be "estopped from claiming entitlement to dismissal as a remedy." Id. at 153, 836 A.2d 779.
Here, plaintiff's attorney had an affidavit of merit that had been signed by a qualified professional on January 30, 2007, but did not serve the affidavit of merit until July 17, 2007, which was more than 120 days after Londono had filed her amended answer to the complaint. Plaintiff's attorney provided no explanation for failing to serve the affidavit within the time required by N.J.S.A. 2A:53A-27. Plaintiff therefore did not show that the failure to serve a timely affidavit of merit was due to "extraordinary circumstances." Palanque, supra, 168 N.J. at 405, 774 A.2d 501; Balthazar, supra, 358 N.J.Super. at 26, 816 A.2d 1059.
Moreover, plaintiff did not establish that she substantially complied with N.J.S.A. 2A:53A-27. Plaintiff failed to show that she generally complied with the statute and provided no explanation for her lack of compliance. Furthermore, because plaintiff had not served her expert report, Londono did not have reasonable notice as to the basis for the legal malpractice claim asserted against her.
In our judgment, the trial court's order dismissing plaintiff's legal malpractice claim for failure to comply with the affidavit of merit statute is fully in accord with Ferreira. In Ferreira, the Court stated that:
[i]n a case where the plaintiff has in hand an affidavit within the 120-day *985 statutory period and serves the affidavit on defense counsel outside that time frame but before defense counsel files a motion to dismiss, the defendant shall not be permitted to file such a motion based on the late arrival of the affidavit. If defense counsel files a motion to dismiss after the 120-day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and extraordinary circumstances do not apply.

[Ferreira, supra, 178 N.J. at 154, 836 A.2d 779 (emphasis added).]
Plaintiff argues, however, that Londono should be estopped from raising the failure to serve a timely affidavit of merit as a defense because Londono engaged in discovery after the statutory deadline passed. In support of this contention, plaintiff relies upon Knorr v. Smeal, 178 N.J. 169, 836 A.2d 794 (2003).
In Knorr, the plaintiffs failed to serve an affidavit of merit within the required 120 days. Id. at 175, 836 A.2d 794. Instead of filing a motion to dismiss the plaintiffs' complaint, the defendant continued with discovery, which included the physical examination of one of the plaintiffs. Ibid. In addition, the parties were deposed and the plaintiffs filed their expert report. Ibid. More than fourteen months after the deadline for filing the affidavit of merit, and more than four months after the trial court's deadline for filing dispositive motions, the defendant moved to dismiss the plaintiffs' complaint. Id. at 176, 836 A.2d 794.
The Court in Knorr held that the defendant had "induced [the] plaintiffs to believe that the case was on course[,]" and caused the plaintiffs to incur "significant expert and deposition costs, as well as emotional stress under the mistaken belief that their cause of action was still viable." Id. at 180, 836 A.2d 794. The Court, therefore, determined that the defendant was estopped from seeking dismissal of the claim. Ibid. The Court also applied the doctrine of laches and concluded that the defendant forfeited his right to dismissal because he slept on his rights and the plaintiffs were harmed by the delay. Id. at 180-81, 836 A.2d 794.
In our judgment, plaintiff's reliance upon Knorr is misplaced. As we stated previously, the record shows that the affidavit of merit was due to be filed by April 18, 2007, and Londono filed her motion to dismiss on July 2, 2007. Prior to filing her motion, Londono and plaintiff had only exchanged limited paper discovery. Moreover, because plaintiff had not responded to certain discovery requests, Londono filed a motion to compel discovery. In addition, at the time Londono sought dismissal of plaintiff's complaint, Londono had not been deposed.
Thus, Londono never led plaintiff to believe that she had a viable claim, nor did she sit back while plaintiff incurred extensive costs in pursuing the claim against her. We therefore conclude that estoppel and laches do not preclude Londono from raising the affidavit of merit statute as a defense.
Plaintiff additionally argues that dismissal of her legal malpractice claim against Londono is not warranted because, although the trial court conducted case management conferences in the matter, Londono never mentioned the affidavit of merit at the conferences or asked the court to establish a deadline for its submission. We are not persuaded by this contention.
In Ferreira, the Court stated that in cases in which the affidavit of merit statute applies, the trial court should conduct an *986 accelerated case management conference within ninety days of service of the defendant's answer and, if an affidavit of merit has not been served by that time, the court should remind the parties of the obligations under the statute. Ferreira, supra, 178 N.J. at 154-55, 836 A.2d 779.
In this matter, the trial court held a telephonic case management conference on August 25, 2006. Although Londono had not yet filed an answer, her attorney participated in the conference. The court entered a case management order on October 3, 2006. The order did not establish a deadline for service of the affidavit of merit regarding plaintiff's claims against Londono; however, the order required plaintiff to respond to Londono's discovery requests by October 24, 2006, and furnish her expert reports by November 23, 2006. Plaintiff did not respond to the discovery requests or serve her expert reports by those dates.
The court also conducted telephonic case management conferences on January 2, 2007 and April 26, 2007. It appears that, during the conferences, plaintiff's attorney assured the court that plaintiff would serve responses to Londono's discovery requests and serve the expert reports. Plaintiff's attorney also agreed to submit proposed orders memorializing the schedules that had been agreed upon for the exchange of paper discovery and expert reports.
The orders were never submitted to the court, and the deadlines in the October 3, 2006 orders were never formally extended. Londono's counsel wrote to plaintiff's attorney on May 16, 2007, demanding responses to the outstanding discovery requests. Plaintiff did not provide the requested discovery until after Londono filed her motion to dismiss.
We are convinced that, under these circumstances, the trial court's failure to explicitly order plaintiff to serve her affidavit of merit within the time required by N.J.S.A. 2A:53A-27 does not bar dismissal of plaintiff's complaint. As we have stated, the court's October 3, 2006 order directed plaintiff to respond to discovery and serve her expert reports prior to the deadline for filing of the affidavit of merit. Had the order been complied with prior to the time when Londono filed her motion to dismiss, plaintiff would have been able to argue that she substantially complied with N.J.S.A. 2A:53A-27.
We note that in Saunders v. Capital Health System at Mercer, 398 N.J.Super. 500, 510-11, 942 A.2d 142 (App.Div.2008), the panel reversed an order dismissing a claim of professional negligence for failure to comply with the affidavit of merit statute because the trial court had not conducted the case management conference required by Ferreira. In Paragon Contractors, Inc. v. Peachtree Condominium Association, 406 N.J.Super. 568, 582, 968 A.2d 752 (App.Div.2009), the panel expressed its disagreement with the holding in Saunders and concluded that the trial court's failure to conduct the Ferreira case management conference did not toll the time for complying with the statute.
We see no need to join the debate on this issue. Suffice it to say, the Saunders case is distinguishable because in this case the trial court conducted several case management conferences and ordered plaintiff to serve her expert reports before the deadline for serving the affidavit of merit and before Londono filed her motion to dismiss.
Accordingly, we affirm the trial court's order of August 2, 2007, dismissing plaintiff's legal malpractice claim against Londono.

III.
We turn to plaintiff's appeal from the orders entered on November 8, 2007, *987 which granted defendants' motions for summary judgment.
When reviewing an order granting summary judgment, we apply the same standards that are applied by the trial court. Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46, 916 A.2d 440 (2007); Stoffels v. Harmony Hill Farm, 389 N.J.Super. 207, 209, 912 A.2d 184 (App.Div.2006). Summary judgment may be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).

A. Additional Claims Against Londono.

In addition to the legal malpractice claim, plaintiff asserted a claim against Londono for fraud and a claim under RICO. In the order of November 8, 2007, granting Londono's motion for summary judgment, the trial court wrote that plaintiff had not presented sufficient, credible evidence to support a fraud claim. The court also wrote that plaintiff had not presented "even slightly specific credible proof of a pattern of racketeering to the point that [the RICO] claim borders on the frivolous."

1. Fraud Claim.

A plaintiff asserting a claim of common-law fraud must establish: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereupon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-25, 432 A.2d 521 (1981)). "Fraud is not presumed; it must be proven through clear and convincing evidence." Stochastic Decisions, Inc. v. DiDomenico, 236 N.J.Super. 388, 395, 565 A.2d 1133 (App.Div.1989) (citing Albright v. Burns, 206 N.J.Super. 625, 636, 503 A.2d 386 (App.Div.1986), certif. denied, 121 N.J. 607, 583 A.2d 309 (1990)).
Here, plaintiff alleges that Londono told her in March 2002 that Echevarria had provided a deposit of $41,000 and executed the contract for the sale of the property. Plaintiff asserts that Londono knew that the deposit had not been made and the contract had not been finalized. Indeed, Londono has acknowledged that Echevarria did not tender the deposit monies until May 30, 2002. She has also asserted that the parties did not enter a binding agreement until June 14, 2002.
Plaintiff further alleges that she relied upon Londono's misrepresentations when she informed Gracia that a deposit had been received and a contract had been executed. As a consequence, Gracia removed the property from the market. Plaintiff claims that she would have refused to go forward with the sale to Echevarria if she had known that there was no binding agreement until June 14, 2002. She also alleges that she was compelled to sell the property to Echevarria for $410,000, which was less than its fair market value.
We are convinced that plaintiff presented sufficient credible evidence to support her claim of fraud against Londono. Plaintiff has presented evidence that Londono made statements of fact that were false, knowing that the statements were false. Plaintiff asserts that Londono intended that plaintiff would rely on the false statements to ensure that the transaction went forward. She also asserts that she relied upon Londono's false statements and, as a result, sustained damages.
*988 Londono argues, however, that there is no evidence that she had a motive to defraud plaintiff. She says that Londono had nothing to gain by "selling out" her client. She maintains that there is insufficient evidence to show that plaintiff wanted to continue to market the property in April, May and June 2002. Londono may ultimately be able to convince a jury that she did not intend to defraud plaintiff; however, that issue cannot be resolved as a matter of law. In our judgment, plaintiff has presented sufficient credible evidence to raise a genuine issue of material fact as to Londono's intent.
Londono further contends that plaintiff's fraud claim is barred by the affidavit of merit statute because it is substantially indistinguishable from the legal malpractice claim. In support of this contention, Londono relies upon Couri v. Gardner, 173 N.J. 328, 340, 801 A.2d 1134 (2002), where the Court stated that:
[i]t is not the label placed on the action that is pivotal but the nature of the legal inquiry. Accordingly, when presented with a tort or contract claim asserted against a professional specified in the [affidavit of merit] statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession.
In our view, Couri does not support Londono's argument. To prevail on her fraud claim, plaintiff need not present proof that Londono deviated from the professional standard of care applicable to attorneys. Accordingly, we conclude that the affidavit of merit statute does not preclude plaintiff from asserting her fraud claim against Londono.
Londono additionally argues that plaintiff's fraud claim fails for lack of sufficient proof of damages. In this case, plaintiff has alleged that she suffered damages because her property was worth more than the $410,000 that she received in the sale to Echevarria.
We recognize that plaintiff did not name an expert witness to testify as to the value of the property at the time of the sale and that such evidence is ordinarily required to establish property values. We also recognize that plaintiff intended to rely at trial upon a CMA prepared by real estate agent Nelson Villa ("Villa") to support her claim that the property had a value of as much as $860,000, but Villa submitted a certification to the trial court in which he stated that his CMA was based on "inaccurate" information and "substantially overvalue[d] the subject property."
Even so, plaintiff presented the trial court with an appraisal performed by Haber Appraisal Company, Inc. ("Haber") for the bank from which Echevarria sought a mortgage. The Haber appraisal employed a comparable sales approach, appraised the industrial portion of the property at $355,000 and the residential portion at $160,000, for a total of $515,000, which Haber discounted by fifteen percent to allow for the potential of extraordinary repairs. Haber thus appraised the property at $435,000 as of August 2002. Because the Haber appraisal placed a higher value on the property than the $410,000 that plaintiff received from Echevarria, the appraisal provides sufficient credible evidence to support plaintiff's damage claim.

2. RICO Claim.

To support a claim under RICO, plaintiff must establish:
(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated *989 with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendant participated in a pattern of racketeering activity that included at least two racketeering acts.
[Annulli v. Panikkar, 200 F.3d 189, 198 (3d Cir.1999).]
The term "racketeering activity" is defined in 18 U.S.C.A. § 1961(1) to include acts that may constitute mail or wire fraud under federal criminal statutes. The term racketeering "enterprise" is defined to mean "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C.A. § 1961(4). A "pattern of racketeering activity" is defined to mean "at least two acts of racketeering activity[.]" 18 U.S.C.A. § 1961(5).
In her complaint, plaintiff alleged that Echevarria constituted a "racketeering enterprise." She also alleged that Londono, Chavez, Alonso, Unicasa, Gracia and Fernandez constituted a "racketeering enterprise." Plaintiff further alleged that defendants had engaged in a "pattern of racketeering activity."
In our judgment, the evidence presented by plaintiff is insufficient to show that Londono was part of a "racketeering enterprise." Moreover, because the RICO claim relates to a single transaction, there is insufficient proof that the alleged "enterprise" engaged in a "pattern of racketeering activity."
We accordingly affirm the grant of summary judgment on plaintiff's RICO claim against Londono but reverse the grant of summary judgment on the fraud claim. We remand for further proceedings. We note that plaintiff argues that she should be afforded additional time to name a new valuation expert, in light of Villa's repudiation of his CMA. We decline to address this argument. Plaintiff may raise the issue in the trial court on remand.

B. Claims Against Unicasa, Gracia and Fernandez.

In her complaint, plaintiff asserted a claim against these defendants for fraud and a claim under RICO. Plaintiff also asserted claims against Unicasa and Gracia for professional malpractice and consumer fraud. In the order of November 8, 2007, granting summary judgment to these defendants, the court wrote, among other things, that plaintiff had not established any basis for liability on the part of Fernandez and failed to present sufficient proof to support her damage claim. The court also wrote that there was no evidence of a "pattern of racketeering" activity to support the RICO claim.
We note that, in her brief, plaintiff does not argue that the trial court erred by dismissing her malpractice claim against Unicasa and Gracia. Any challenge to the dismissal of that claim is therefore deemed abandoned. W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J.Super. 455, 459, 937 A.2d 1022 (App.Div.2008).

1. Fraud Claim.

Here, plaintiff alleges the following in support of her fraud claim. She says that Gracia: should not have listed the property for sale; violated the terms of the dual agency agreement by negotiating directly with Echevarria on price; failed to perform a CMA on the property; failed to inform plaintiff that the property would be worth more if it was subdivided; failed to inform plaintiff about other potential buyers for the property; failed to produce any qualified buyer other than Echevarria; submitted the DABO to the Hudson County MLS and took the *990 property off the market without verifying that the deposit had been received; and told Londono that she should not have to worry about getting a deposit from Echevarria.
We are convinced that, even viewing this evidence in a light favorable to plaintiff, it is insufficient to show that Unicasa, Gracia or Fernandez acted fraudulently in their dealings with plaintiff. Plaintiff's factual assertions suggest that these defendants may have been negligent in their handling of the sale of plaintiff's property, but plaintiff's allegations are wholly insufficient to support a claim of fraud.

2. RICO Claim.

We are also convinced that the trial court correctly determined that Unicasa, Gracia and Fernandez were entitled to judgment on the RICO claim. We reach this conclusion for essentially the same reasons stated previously with regard to the RICO claim against Londono. Plaintiff has not presented sufficient evidence to show that these defendants were part of a racketeering "enterprise" or that they engaged in a "pattern of racketeering activity."

3. Consumer Fraud Claim.

Plaintiff alleged, among other things, that Unicasa and Gracia violated the CFA because they submitted the DABO form to the Hudson County MLS without first ensuring that the deposit had been received and the contract had been fully executed. Plaintiff alleged that, when Gracia submitted the DABO form, he wrongfully relied upon plaintiff's statement that Echevarria had made the deposit and a contract had been executed and failed to make an independent investigation of the facts.
The CFA provides in pertinent part that:
[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]
[N.J.S.A. 56:8-2.]
In addition, the CFA provides that:
[t]o accomplish the objectives and to carry out the duties prescribed by this act, the Attorney General, in addition to other powers conferred upon him by this act, may issue subpoenas to any person, administer an oath or affirmation to any person, conduct hearings in aid of any investigation or inquiry, promulgate such rules and regulations, and prescribe such forms as may be necessary, which shall have the force of law.
[N.J.S.A. 56:8-4.]
The CFA thus establishes three categories of unlawful practices. The first category is an affirmative misrepresentation, even if not made with knowledge of its falsity or an intent to deceive. Gennari, supra, 148 N.J. at 605, 691 A.2d 350 (citing Strawn v. Canuso, 140 N.J. 43, 60, 657 A.2d 420 (1995); Cox v. Sears Roebuck & Co., 138 N.J. 2, 19, 647 A.2d 454 (1994); Chattin v. Cape May Greene, Inc., 124 N.J. 520, 522, 591 A.2d 943 (1991) (Stein, J., concurring)). The second category is the knowing omission or concealment of a material fact, accompanied by an intent that others rely upon the omission or concealment. Ibid. (citing Cox, supra, 138 N.J. at 18, 647 A.2d 454; Chattin v. *991 Cape May Greene, Inc., 243 N.J.Super. 590, 603, 581 A.2d 91 (App.Div.1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991)). The third category is a violation of a specific regulation promulgated under the CFA. Ibid. (citing Strawn, supra, 140 N.J. at 60, 657 A.2d 420; Cox, supra, 138 N.J. at 18, 647 A.2d 454). In this last category, the unlawful practice may be proven without the need to show intent. Ibid. (citing Strawn, supra, 140 N.J. at 60, 657 A.2d 420; Cox, supra, 138 N.J. at 17-18, 647 A.2d 454; Chattin, supra, 124 N.J. at 522, 591 A.2d 943 (Stein, J., concurring); Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 377, 371 A.2d 13 (1977)).
In our judgment, plaintiff failed to present sufficient evidence to show that Unicasa and Gracia violated the CFA. Plaintiff has not shown that these defendants made an affirmative misrepresentation of a material fact or knowingly failed to disclose a material fact with intent that plaintiff rely thereon.
Plaintiff argues, however, that Unicasa and Gracia violated N.J.A.C. 11:5-6.1(o)(2), which provides that:
[i]n the time period after a contract prepared by a licensee emerges from Attorney Review or a contract not subject to Attorney Review is fully executed and delivered to all parties, but before a closing occurs at which title is transferred, unless such a contract is canceled and the seller authorizes the listing broker to renew efforts to market the property, any advertisement of the property which is the subject of the contract shall include the term "under contract."
We are convinced that the alleged violation of this regulation does not provide a basis for a claim under the CFA. The regulation was not adopted by the Attorney General pursuant to the CFA; it was adopted by the Real Estate Commission pursuant to its rule-making powers in N.J.S.A. 45:15-16.49. Furthermore, the regulation does not specifically state that it is an unlawful practice if a real estate agent advertises property as "under contract" before the contract is "fully executed and delivered to all parties."
We therefore affirm the trial court's order granting summary judgment to Unicasa and Gracia.

C. Claims Against Echevarria.

Plaintiff asserted a fraud claim and a RICO claim against Echevarria. The trial court found that plaintiff did not present sufficient evidence to support these claims.

1. Fraud Claim.

Here, Echevarria made an offer to purchase the property, which plaintiff accepted. Echevarria's attorney negotiated the terms of the contract and rider, which were agreed to by plaintiff. The fact that Echevarria was dilatory in tendering the deposit is not evidence of fraud. There also is no evidence to show that Echevarria conspired with Gracia to take the property off the market in order to ensure that he could purchase the property for less than its fair market value. We are convinced that, even viewing the evidence in a light favorable to plaintiff, the evidence did not support a claim of fraud against Echevarria.

2. RICO Claim.

We are additionally convinced that the evidence proffered by plaintiff did not support her RICO claims against Echevarria. Plaintiff did not present sufficient evidence to show that Echevarria was part of a racketeering "enterprise" or that he engaged in a "pattern of racketeering activity."
*992 We accordingly affirm the order granting the motion for summary judgment by Echevarria.

IV.
Plaintiff also has appealed from the trial court's order quashing the subpoenas issued to the NJREC, the Hudson County MLS, the Guttenberg Planning Board and the Guttenberg Zoning Board.
Plaintiff's subpoena to the NJREC sought information regarding any investigation the NJREC may have undertaken of Gracia and the sale of plaintiff's property. Plaintiff suggests that the NJREC's file may have disclosed facts relevant to her claims for common law fraud and consumer fraud. It appears, however, that plaintiff had a sufficient opportunity to obtain all relevant information concerning those claims in the other discovery undertaken in this litigation. We are satisfied that the court did not abuse its discretion by quashing the subpoena.
We are additionally satisfied that the court did not err by quashing the subpoena issued to the Hudson County MLS. Plaintiff conceded that she was already in possession of the documents sought from that agency. In our judgment, plaintiff did not establish a valid basis for seeking duplicate copies of the documents.
We also conclude that the court did not abuse its discretion by quashing the subpoenas issued to the Guttenberg Planning and Zoning Boards. Plaintiff was seeking any applications Echevarria may have submitted for developing the property. We agree with Unicasa, Gracia and Fernandez that the subpoenas were not likely to produce information relevant to this lawsuit. The permit applications were not relevant to when the contract was formally executed, nor was Echevarria's intended use of the property relevant to the property's fair market value at the time of the sale.
We accordingly affirm the trial court's order of October 19, 2007, quashing the subpoenas.
Affirmed in A-1452-07; affirmed in part, reversed in part and remanded for further proceedings in conformity with this opinion in A-1975-07.
NOTES
[1] Unicasa was superseded by Century 21 Frontier Realty sometime after September 2002.
[2] In that action, Echevarria alleged that he assigned the contract to Echevarria Industries, Inc. For convenience, we will hereinafter refer to Echevarria and Echevarria Industries, Inc. as "Echevarria."