**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2019-17T4

MICHAEL VANCE, LORI VANCE,
and WALKER MANAGEMENT
SYSTEMS, INC.,

      Plaintiffs-Appellants,

v.

JOAN SCERBO, Personal
representative of the Estate of
GABRIEL AMBROSIO, ESQ.,
ANTHONY P. AMBROSIO, ESQ.,
LAW OFFICE OF JOHN T. AMBROSIO,
AMBROSIO & TOMCZAK, and
LAW OFFICE OF ANTHONY P.
AMBROSIO,

      Defendants,

and

JOHN T. AMBROSIO, ESQ. and
AMBROSIO & ASSOCIATES, LLC,

      Defendants-Respondents.

_____

Argued February 4, 2019 – Decided February 26, 2019

Before Judges Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2931-16.

David A. Berlin argued the cause for appellants (Weisberg Law, attorneys; Matthew B. Weisberg, on the briefs).

Cathleen Kelly Rebar, argued the cause for respondents (Rebar Bernstiel, attorneys; Cathleen Kelly Rebar, of counsel; Jeannie Park Lee, on the brief).

PER CURIAM

Plaintiffs Michael Vance, Lori Vance, and Walker Management Systems, Inc. ("Walker") appeal from the Law Division's December 7, 2017 order granting summary judgment to defendants John Ambrosio, Esq. and Ambrosio & Associates, LLC and dismissing their legal malpractice complaint with prejudice. For the reasons that follow, we reverse and remand.

I.

We summarize the following facts from the record, viewing "the facts in the light most favorable to [plaintiff,] the non-moving party." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)).

The Asset Purchase Agreement

The facts underlying this legal malpractice action stem from a dispute over a contract to purchase assets and customers lists for a solid waste collection

2

business. In March 2009, Meadowbrook Industries, LLC ("Meadowbrook") and Walker, both licensed solid waste collection utilities, entered into an Asset Purchase Agreement ("APA") in which Meadowbrook agreed to acquire substantially all of Walker's solid waste collector assets, including Walker's physical equipment and customer lists. The APA also contained a restrictive covenant preventing Walker, Lori Vance, and Michael Vance from competing with Meadowbrook for a period of five years. At the time of the transaction, plaintiff Lori Vance was the sole owner of Walker.

On May 11, 2009, the parties entered into an amendment to the APA, drafted by Meadowbrook's counsel, which detailed how Meadowbrook would begin servicing Walker's customers. Thereafter, a closing for the transaction occurred on July 10, 2009. Meadowbrook's attorney attended the closing, but Lori Vance, on behalf of Walker, was unrepresented by counsel.

At the time of the closing, Walker was unable to deliver its containers free of liens and encumbrances because title to the containers was held by various creditors and Walker lacked the funds to satisfy the outstanding debts to the creditors. The parties added a provision to the closing memorandum whereby Meadowbrook would assume the debt and indemnify Walker against any claims

A-2019-17T4

made by creditors. According to Lori Vance, Meadowbrook surreptitiously added these terms to the closing memorandum without her knowledge.

Approximately one week after the closing, Meadowbrook advised Walker that it was disqualified from taking the assignment of service contracts with the State of New Jersey due to its previous violations of the "pay-to-play" law. Lori Vance affirms that had Meadowbrook disclosed the "pay-to-play" ban on servicing the State contracts, she would not have sold Walker's assets to Meadowbrook.

The Underlying Meadowbrook Action

On September 1, 2009, Meadowbrook filed a complaint against Walker, Lori Vance, and Michael Vance, alleging breach of contract and violation of restrictive covenant provisions of the APA ("Meadowbrook action"). In December 2009, Walker retained its counsel for the first time and answered the complaint. Walker also counterclaimed against Meadowbrook, alleging the following four counts: (1) Meadowbrook breached the APA by negotiating down Walker's debts; (2) Meadowbrook breached the covenant of good faith and fair dealing by surreptitiously adding terms to the closing memorandum; (3) Meadowbrook committed fraud by surreptitiously adding terms to the closing

A-2019-17T4

memorandum; and (4) Meadowbrook breached the covenant of good faith and fair dealing by failing to disclose that it could not perform the State contracts.

In April 2010, while discovery was underway, Walker retained Gabriel Ambrosio, Esq. to represent them in the Meadowbrook litigation. In October 2010, Gabriel Ambrosio became terminally ill, and the matter transferred to his brother and law partner, Anthony Ambrosio, Esq. While the matter was being handled by Anthony Ambrosio, plaintiffs' counterclaims were dismissed for failure to provide discovery to Meadowbrook.

In January 2011, defendants John Ambrosio and Ambrosio & Associates took over the case. Defendants restored Walker's counterclaims and responded to outstanding discovery requests. In May 2011, Meadowbrook filed a motion for summary judgment on the issue of liability. In opposition, Walker argued that the APA was unenforceable without prior approval from the New Jersey Department of Environmental Protection ("DEP"). Additionally, Walker asserted that the July 10, 2009 closing memorandum was secured by fraud because Meadowbrook had added terms without Lori Vance's knowledge.

The motion court concluded that the DEP should have been notified of the transaction and that the obligation to give such notice was borne by both parties, but that the failure to obtain DEP approval did not render the contract illegal,

A-2019-17T4

unenforceable, or void. The court granted summary judgment to Meadowbrook on liability and, following a trial on damages, entered judgment in favor of Meadowbrook in the amount of $38,166.50.

Walker, still represented by John Ambrosio and Ambrosio & Associates, appealed to this court. See Meadowbrook Indus., LLC v. Walker Mgmt. Sys., Inc., No. A-3568-11 (App. Div. Mar. 5, 2013). On appeal, Walker argued "[b]ecause the transfer of assets was not approved by the DEP, the contract is rendered illegal, against public policy, and is thus, unenforceable." Id. at 7.

We concluded that although both parties were required to seek approval from the DEP, the failure to obtain DEP approval subjected the parties only to potential enforcement penalties and did not render the contract illegal or unenforceable. Id. at 8-11. Additionally, we concluded that the doctrine of unclean hands barred Walker from arguing that the APA was rendered illegal by the failure to obtain DEP approval. Id. at 10-11. For these reasons, we affirmed the judgment in favor of Meadowbrook. Id. at 11.

The Instant Malpractice Action

On October 31, 2016, Michael Vance, Lori Vance, and Walker filed a complaint against the estate of Gabriel Ambrosio, Anthony Ambrosio, John Ambrosio and each of the attorney's law firms, alleging four counts: (1)

professional negligence/malpractice and simple negligence; (2) breach of contract/covenant of good faith and fair dealing; (3) breach of fiduciary duty; and (4) loss of consortium.[1] Plaintiffs alleged that defendants failed to argue the proper theory of fraud in the Meadowbrook action when opposing summary judgment. Lori Vance affirms that despite her requests to do so, defendants failed to argue that Meadowbrook's fraudulent failure to disclose that it could not service the State contracts voided the APA from its inception. Plaintiffs aver that John Ambrosio told them not to pursue this theory because it was "simpler to keep one defense and . . . if the contract is illegal, nothing else matters." Plaintiffs assert that the motion court would not have granted summary judgment in the Meadowbrook action had defendants raised their preferred theory of fraud.

On March 13, 2017, all defendants answered the complaint. On September 13, 2017, defendants John Ambrosio and Ambrosio & Associates (together "Ambrosio defendants"), LLC filed a motion for summary judgment.[2]

---

[1] Plaintiffs later withdrew the loss of consortium claim.

[2] In their motion for summary judgment, John Ambrosio and Ambrosio & Associates indicated that they were improperly pled as John T. Ambrosio d/b/a Ambrosio & Tomczak f/d/b/a Law Office of John T. Ambrosio. The other defendants, Joan Scerbo, Anthony Ambrosio, and Law Office of Anthony P.

On October 17, 2017, plaintiffs filed an opposition to the Ambrosio defendants' motion for summary judgment.

Following oral argument on December 1, 2017, the trial court rendered an oral opinion granting summary judgment in favor of the Ambrosio defendants. The trial judge found that plaintiffs had not advanced a plausible theory that the contract would have been void on the basis of fraud. The trial judge concluded "there's nothing in mind that would lead to the conclusion that had this issue of pay-to-play been disclosed to the court that any different result would have yielded as a result of that disclosure." On December 7, 2017, the trial court entered an order granting summary judgment to the Ambrosio defendants.

Plaintiffs appealed the trial court's grant of summary judgment. On appeal, plaintiffs present the following points for our review:

> A. Moving Defendants Failed to Raise the Correct Theory of Fraud in the Underlying *Meadowbrook* Action, namely that the Agreement was Void due to Meadowbrook's Fraudulent Omission that Meadowbrook was Banned from Servicing New Jersey State contracts due to a pay-for-play scandal.
>
> B. Plaintiffs would have Prevailed on the Correct Theory of Fraud.

---

Ambrosio, also filed motions for summary judgment, which plaintiff did not oppose. Plaintiffs have not appealed the orders dismissing these other defendants.

A-2019-17T4

C. Plaintiffs would have Prevailed on the Correct Theory of Fraud as the Appellate Division's Determination of Unclean Hands was Made as a Result of Moving Defendants' Malpractice and the Determination was Limited.

1. Plaintiffs would have Prevailed on the Correct Theory of Fraud as Appellate Division's Determination of Unclean Hands was Made as a Result of Moving Defendants' Malpractice.

2. Plaintiffs would have Prevailed on the Correct Theory of Fraud as the Appellate Division's Determination of Unclean Hands was Limited to the Subject Matter of NJDEP Approval.

D. Plaintiff, Michael Vance suffered a Non-Compete Provision without Compensation due to the Court's finding that WMS, not Meadowbrook, breached the Underlying Agreement.

E. The motion judge independently raised issues that were not among the basis argued by Defendants in their briefs or oral argument.

In response, the Ambrosio defendants contend, among other things, that the trial court properly granted summary judgment because plaintiffs presented insufficient evidence to support their assertion that they would have been successful on their preferred theory of fraud.

A-2019-17T4

II.

A.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Although Rule 4:46-1 permits a party to file a motion for summary judgment before the close of discovery, "[g]enerally, summary judgment is inappropriate prior to the completion of discovery." Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003). A party opposing a motion for summary judgment on the grounds that discovery is incomplete, however, must "demonstrate with some degree of particularity the likelihood

that further discovery will supply the missing elements of the cause of action." Badiali v. New Jersey Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington, 359 N.J. Super. at 496); see also Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007).

When additional discovery on material issues may give rise to a jury question, the party opposing summary judgment should be given the opportunity to take discovery before disposition of the motion. See Wilson v. Amerada Hess Corp., 168 N.J. 236, 253-54 (2001) (reversing summary judgment where requested discovery might support inference of bad faith sufficient to raise jury question); Mohamed v. Iglesia Evangelica Oasis De Dalvacion, 424 N.J. Super. 489, 499-500 (App. Div. 2012) (reversing summary judgment where discovery period had five months to run and additional discovery was material to whether defendant engaged in commercial activity on its premises).

In this case, the Ambrosio defendants moved for summary judgment on September 13, 2017, and trial court granted summary judgment on December 1, 2017. The discovery deadline was set to expire on March 14, 2018. Therefore, plaintiffs contend that further discovery, including the taking of depositions,

would have supported their claims.  Mindful of this contention and guided by the above standard of review, we address the parties' arguments.[3]

B.

We first consider whether plaintiffs have advanced a prima facie claim of legal malpractice.  To prevail on a legal malpractice claim, a plaintiff must establish the following elements:  "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff."  McGrogan v. Till, 167 N.J. 414, 425 (2001).  "The most common way to prove the harm inflicted by [legal] malpractice is to proceed by way of a 'suit within a suit' in which a plaintiff presents the evidence that would

---

[3] Before addressing the merits of plaintiffs' arguments, we note that the Ambrosio defendants assert that plaintiff's brief should be stricken because the statement of facts lacks any record citations.  Rule 2:6-2(a)(5) requires that an appellate brief contain "[a] concise statement of the facts material to the issues on appeal supported by references to the appendix and transcript." (emphasis added); see also R. 2:6-9 (providing that the court may suppress a brief that "does not substantially conform to these rules or is so inadequate that justice cannot be done without the court's independent examination of the record or research of the law").  Although plaintiffs' brief lacks record citations in the statement of facts, it is apparent that the statement of facts is adopted from plaintiff's complaint and Lori Vance's affidavit in opposition to summary judgment.  Therefore, we decline to suppress plaintiffs' brief because we can address plaintiffs' arguments without conducting an extensive independent review of the record.

12

have been submitted at a trial had no malpractice occurred." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 358 (2004). "The 'suit within a suit' approach aims to clarify what would have taken place but for the attorney's malpractice." Ibid.

Courts, however, need not rigidly adhere to the "suit within a suit" paradigm; "flexibility [is] accorded to lawyers and judges to limn an appropriate procedure in each case based on the facts and on the claim." Id. at 361. As in this case, "[a] flexible approach is particularly warranted in the more unusual cases where the aggrieved plaintiff in the malpractice action was the defendant in the original underlying action." Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 86 (App. Div. 2007) (citing Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 343 (1980)). "[T]he measure of damages for legal malpractice in the defense of a client's cause is ordinarily fixed at the amount of the adverse judgment, or that portion thereof, that would not have been obtained against the client but for the attorney's negligence." Id. at 85.

Accordingly, in this case, plaintiffs were required to establish that had John Ambrosio raised the correct theory of fraud in the underlying Meadowbrook litigation, Meadowbrook's damages would have been reduced or Walker would have recovered on its counterclaims. See id. at 85-86. In this

13

regard, plaintiffs primarily contend the APA would have been void from its inception due to Meadowbrook's fraudulent omission of its "pay-to-play" ban.

As an initial matter, the record confirms that the Ambrosio defendants did not assert the argument that the APA was void from its inception based on Meadowbrook's fraudulent nondisclosure of its "pay-to-pay" restriction on taking on the State contracts. Rather, in opposing Meadowbrook's motion for summary judgment, the Ambrosio defendants primarily argued that the APA was unenforceable without prior approval from the DEP and that the closing memorandum was secured by fraud because Meadowbrook added terms without Lori Vance's knowledge. Similarly, on appeal, the Ambrosio defendants argued that "because the transfer of assets was not approved by the DEP, the contract is rendered illegal, against public policy, and is thus, unenforceable." Meadowbrook, slip op. at 7. The Ambrosio defendants did not raise plaintiffs' preferred theory of fraud in either instance.

Thus, if plaintiffs' preferred theory of fraud would have been successful, the Ambrosio defendants may have breached their duty of care to plaintiff by failing to raise this argument. If the motion court found that the APA should be rescinded on the basis of fraud, then Meadowbrook would not have been able to enforce the APA and obtain damages against Walker in the underlying

Meadowbrook action. Accordingly, plaintiffs could recover damages in the instant malpractice action equal to the amount of the judgment entered in favor of Meadowbrook. See Carbis, 397 N.J. Super. at 85. Additionally, had the court rescinded the APA, plaintiffs would not have been bound by the non-compete provision and may have been able to establish further damages on this basis.

Alternatively, even if the court would not have voided the APA, Walker may still have recovered damages on its counterclaims in the Meadowbrook action based on Meadowbrook's fraudulent nondisclosure of the "pay-to-play" ban. Accordingly, in the instant malpractice action, plaintiffs would have been able to recover the amount of damages it would have received on its counterclaims in the underlying action.

Thus, to determine whether plaintiffs' legal malpractice claim can survive summary judgment, we next consider whether plaintiffs have presented sufficient evidence to support that their preferred theory of fraud would have been successful in the Meadowbrook action.

## C.

Plaintiffs assert that Meadowbrook committed legal or equitable fraud by failing to disclose that they were barred from taking on the state contracts due to a "pay-to-play" violation. "In order to prevail on a common law fraud claim,

plaintiff must show that defendant: (1) made a representation or omission of a material fact; (2) with knowledge of its falsity; (3) intending that the representation or omission be relied upon; (4) which resulted in reasonable reliance; and that (5) plaintiff suffered damages." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013) (citing Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624 (1981)). "Equitable fraud is similar to legal fraud; however, the plaintiff need not establish the defendant's scienter, that is, defendant's knowledge of the falsity and intent to obtain an undue advantage." Ibid. "Fraud is not presumed; it must be proven through clear and convincing evidence." Stoecker v. Echevarria, 408 N.J. Super. 597, 617 (App. Div. 2009) (quoting Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989)).

"The law is well settled that equitable fraud provides a basis for a party to rescind a contract." First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 136 (2003); see also Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, 527 (2008) ("Where a party has gained an unfair advantage by virtue of a fraudulent misrepresentation, and monetary damages alone will not satisfy the injury sustained by the aggrieved party, courts have looked to the equitable remedy of rescission to eliminate the damage."). However, "[i]n an action for equitable

fraud, the only relief that may be obtained is equitable relief, such as rescission or reformation of an agreement and not monetary damages." Daibo v. Kirsch, 316 N.J. Super. 580, 591-92 (App. Div. 1998) (quoting Enright v. Lubow, 202 N.J. Super. 58, 72 (App. Div. 1985)).

In this case, viewing the facts in the light most favorable to plaintiffs and granting all inferences in their favor, plaintiffs have presented sufficient evidence to establish a prima facie case of legal or equitable fraud in the underlying Meadowbrook action.

As to the first element, that Meadowbrook made a material omission, Lori Vance affirms that she would not have entered into the APA had she known that Meadowbrook was banned from performing the State contracts. She also asserts that Walker was forced to spend substantial funds to enable it to continue to service the State contracts, despite already selling a majority of its physical assets of Meadowbrook. From this evidence, a reasonable jury could find that Meadowbrook's omission of the fact that Meadowbrook was barred from performing the State contracts was material to plaintiffs' decision to enter into the APA.[4]

---

[4] Defendants point out that after Meadowbrook's disclosure of the "pay-to-play" ban, Lori Vance acknowledged that "the contracts between [Plaintiffs] and the

As to the second and third elements, which are not required for equitable fraud, plaintiffs present sufficient evidence for a reasonable jury to infer that Meadowbrook was aware that the "pay-to-play" ban was material to the transaction and that plaintiffs would rely on the nondisclosure of the ban. In this respect, Lori Vance affirms that Meadowbrook's principal informed her that "four days prior to the closing, Meadowbrook received a letter from the State of New Jersey reiterating that . . . Meadowbrook was banned from performing contracts with the State of New Jersey." Moreover, Meadowbrook's principal had been banned from servicing State contracts for a number of years prior to the negotiation of the APA. Meadowbrook's principal, however, did not disclose the ban until approximately five days after the closing. From these facts, a reasonable jury could infer that Meadowbrook's principal possessed scienter – that he knew Meadowbrook would not be able to perform the State contracts and intended that Walker would rely on his omission of the "pay-to-play" ban.

As to the fourth element, that plaintiffs reasonably relied on Meadowbrook's omission, a reasonable jury could infer that plaintiffs justifiably

State Parks have been salvaged and continue to be serviced by [Plaintiffs] since Meadowbrook is barred from doing so." Nonetheless, this admission would not prevent a reasonable jury from inferring that plaintiffs would not have agreed to the APA had Meadowbrook initially disclosed the "pay-to-play" ban.

expected that Meadowbrook would service the State contracts pursuant to the APA. Reliance must be actual and justifiable under the circumstances. See Walid v. Yolanda for Irene Couture, 425 N.J. Super. 171, 181 (App. Div. 2012). In general, a party is not required to conduct an independent investigation to uncover a fraudulent misrepresentation or omission. See id. at 181-84. Indeed, "[o]ne who engages in fraud . . . may not urge that one's victim should have been more circumspect or astute." Jewish Ctr., 86 N.J. at 626 n.1.

Relevant to reasonable reliance, Lori Vance affirms that she informed Meadowbrook that Walker's business activities included significant State contracts and that Meadowbrook induced her to enter into the APA by fraudulently omitting that Meadowbrook was banned from performing the State contracts. Contrary to their position in the underlying litigation, the Ambrosio defendants now suggest that plaintiffs' reliance was unreasonable because Walker failed to seek DEP approval for the transaction. However, the record does not establish that plaintiffs would have uncovered the "pay-to-play" issue had they sought DEP approval for the transaction. In this regard, further discovery may substantiate plaintiff's claims that they reasonably relied on Meadowbrook's omission of the "pay-to-play" ban. Thus, viewing the evidence in the light most favorable to plaintiffs, a reasonable jury could infer that

plaintiffs' reliance on Meadowbrook's nondisclosure of the "pay-to-play" ban was reasonable under the circumstances.

Finally, plaintiffs present sufficient evidence to support that they were damaged by entering into the APA without knowledge that Meadowbrook would be able to perform the State contracts. In this regard, Lori Vance affirms: (1) Walker was forced to spend substantial funds to continue to service the State contracts despite already selling a majority of its physical assets of Meadowbrook; (2) Walker filed for Chapter 11 Bankruptcy as a result of Meadowbrook settling Walker's debts for less than the amount owed and Meadowbrook's inability to service the State contracts; (3) Lori and Michael Vance were prevented from finding other employment in the waste-collection industry because of the non-compete provision of the APA; and (4) Walker "lost the commissions on the transferred customers, which [is estimated] to be in excess of $1,183,000 as of the end of 2017."

Depending on the extent of these costs, the motion court may have found that the appropriate remedy was rescission of the APA. See Rutgers Cas. Ins.

Co., 194 N.J. at 527-29.  Alternatively, plaintiffs may have recovered damages based on legal fraud on their counterclaims in the Meadowbrook action.[5]

Thus, plaintiffs have presented sufficient evidence to support that their preferred theory of fraud may have been successful.  We therefore conclude that the trial court improvidently granted summary judgment and dismissed plaintiffs' legal malpractice claim.

D.

Although the trial court did not address this point, the Ambrosio defendants also argue that summary judgment was properly granted because plaintiffs were barred from arguing their preferred theory of fraud by the doctrine of unclean hands.  We reject this argument.

In Meadowbrook, this court determined that the doctrine of unclean hands barred Walker from arguing that the APA should be declared illegal because the parties failed to obtain DEP approval for the transaction.  Meadowbrook, (slip op. at 11).  In this regard, we reasoned "having failed to discharge its obligation to comply with the requirements of N.J.S.A. 48:3-7(c)(1), Walker seeks to

---

[5]  The Ambrosio defendants note that plaintiffs admitted that Walker was insolvent prior to learning of the "pay-to-play" ban and could not cover basic operating costs.  Defendants contend that all of the damages claimed by plaintiffs resulted from Walker's pre-existing insolvency.  This issue, however, is a factual dispute that should not be resolved on summary judgment.

exploit that failure, arguing that the APA should be declared illegal, unenforceable and against public policy precisely because there was no compliance with that statute." Id. at 10.

In this respect, our holding in Meadowbrook only applied the doctrine of unclean hands to bar the specific argument that the contract was rendered illegal by the failure to obtain DEP approval. By contrast, in this case, plaintiffs advance the theory the APA was void from its inception due to Meadowbrook's fraudulent omission of the "pay-to-play" ban. Although the Ambrosio defendants argue that plaintiffs engaged in inequitable conduct in failing to obtain DEP approval, the record does not establish that plaintiffs would have uncovered the "pay-to-play" issue had they sought DEP approval for the transaction. On the record before us, therefore, we cannot conclude that plaintiffs would have been barred from arguing that Meadowbrook committed legal or equitable fraud by the doctrine of unclean hands.

E.

In conclusion, when viewing the evidence in the light most favorable to plaintiffs, we find that plaintiffs have presented a prima facie claim of legal malpractice and find that the trial court improvidently granted summary judgment.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

23                                                    A-2019-17T4