942 A.2d 142 (2008)
398 N.J. Super. 500
Montee SAUNDERS, a minor, by her Guardian ad Litem, Montreal SAUDERS, and Montreal Saunders, Individually, Plaintiffs-Appellants
v.
CAPITAL HEALTH SYSTEM AT MERCER, and Marietta Cahill, CNM, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 2008.
Decided March 5, 2008.
*143 Alan Roth, Newark, argued the cause for appellants (Bendit Weinstock, attorneys, West Orange; Mr. Roth and Abbott S. Brown, on the brief).
Elena B. Zuares, Marlton, argued the cause for respondents (Parker McCay, attorneys; Stacy L. Moore, Jr., of counsel; Ms. Zuares, on the brief).
Before Judges LINTNER, SABATINO and ALVAREZ.
The opinion of the court was delivered by
LINTNER, P.J.A.D.
Plaintiff Montreal Saunders, individually, and as guardian ad litem for her daughter,[1] Montee, appeals from a Law Division order dismissing her malpractice complaint against defendants Capital Health System at Mercer (Capital) and its employee Marietta Cahill, a registered nurse and licensed midwife, for failing to provide defendants with an Affidavit of Merit. Plaintiff alleged that Montee sustained trauma, specifically, "[s]houlder dystocia (Erb's Palsy)," as a result of Cahill's negligence while serving in her capacity as a midwife during Montee's birth. The central issue posed by this appeal is whether an Affidavit of Merit, pursuant to N.J.S.A. 2A:53A-27 (Affidavit of Merit *144 Statute), is required in a personal injury suit for alleged acts of malpractice against a person serving as a licensed midwife. We hold that a licensed midwife is not a "licensed person" under the Affidavit of Merit Statute as enumerated in N.J.S.A 2A:53A-26. We also reverse the order insofar as it dismissed plaintiff's complaint against Capital.
The relevant facts are substantially undisputed. On August 28, 2002, Montreal gave birth to Montee at defendant Capital's facility in Trenton. Capital's records indicate that the baby was vaginally delivered and Cahill was the attending midwife. According to Cahill's curriculum vitae, she has a Bachelor's and Master's degree in nursing, a Master's degree in public health, and a Nurse-Midwifery Certification. Following the delivery, Cahill noted that Montee suffered from shoulder dystocia, affecting her left arm.
Plaintiff's complaint was filed on April 28, 2006. Defendants answered on June 19, 2006, demanding production of an Affidavit of Merit. Plaintiff provided defendants with answers to interrogatories, which asserted the following allegations respecting Montee's delivery:
Defendant, Marietta Cahill, as a Certified Nurse-Midwife, failed to recognize impending complications which could adversely affect the delivery and failed to call in an obstetrician for immediate evaluation, assessment and treatment.
. . . .
Montee Saunders experienced twisting during birth and lack of oxygen while being forcibly pulled and twisted from her mother. Montee Saunders experienced shoulder [dystocia], brachial plexis injury and decreased movement and flaccidity of the left arm.
On September 21, 2006, plaintiff's counsel wrote a letter to defendants' counsel, inquiring about the status of defendants' answers to interrogatories. He also telephoned defense counsel on October 13, 2006, to discuss the case, at which time defense counsel did not mention anything about an Affidavit of Merit.
On November 1, 2006, defendants moved to dismiss plaintiff's complaint for failure to file an Affidavit of Merit. Upon receipt of defendant's motion, plaintiff's counsel realized that he had neglected to provide defendant with the Affidavit of Merit in his file. Dr. Richard L. Luciani had executed an Affidavit of Merit on January 31, 2006, implicating Cahill and Capital. Plaintiff's counsel mistakenly believed that he had provided a copy of Luciani's affidavit in May 2006 with plaintiff's summons and complaint. Upon reviewing defendants' motion on November 6, 2006, plaintiff's counsel immediately faxed defendants' counsel a copy of Luciani's affidavit.
Dismissing plaintiff's complaint with prejudice, the motion judge rejected plaintiff's reliance on substantial compliance and extraordinary circumstances, as well as her argument that had a case management conference been held in accordance with Ferreira v. Ramocas Orthopedic Assocs., 178 N.J. 144, 836 A.2d 779 (2003), counsel would have remedied the inadvertent failure to submit Luciani's affidavit. In her motion for reconsideration, plaintiff maintained that the Affidavit of Merit Statute does not include midwife as a covered profession. Plaintiff asserted that midwifery and nursing are separate categories under the law, that "the circumstances of . . . Cahill's care and treatment . . . is specifically with regard to her duties, responsibilities, and licensure as a midwife," and "[t]here is no evidence that any of her actions . . . had anything to do [with] her responsibilities as a nurse." Plaintiff also reiterated her contention regarding the failure to hold a case management conference. Defendants countered *145 that Cahill is certified as a Nurse-Midwife, "a nurse first," and thus qualifies as a person licensed under the Affidavit of Merit Statute. Denying plaintiff's motion for reconsideration, the judge found that the Court in Ferreira "merely proposes" a case management conference and does not require it. The judge also concluded that N.J.S.A. 2A:53A-26 should not be deemed to exclude licensed medical professionals not listed, such as those who administer anesthesia and repair lacerations, as well as midwives.
On appeal, plaintiff asserts that the judge erred in dismissing the case with prejudice because midwives, as opposed to nurses, are not covered by the Affidavit of Merit Statute and the court did not hold a Ferreira case management conference. Plaintiff also maintains that she substantially complied with the Affidavit of Merit Statute, extraordinary circumstances existed, and defendant is estopped from moving to dismiss. She claims that any dismissal should be without prejudice. Defendants reprise their arguments that, as a nurse-midwife, Cahill falls under the auspices of the Affidavit of Merit Statute and Ferreira does not require a case management conference and specifically calls for a dismissal when, as here, the defendant moves after the prescribed 120-day time period and prior to receipt of an Affidavit of Merit.
We begin our analysis with N.J.S.A. 2A:53A-26, which now specifies fifteen "licensed persons" covered by the Affidavit of Merit Statute. Among those listed are the following pertinent licensed persons or facilities:
As used in this act, "licensed person" means any person who is licensed as:
. . . .
f. a physician in the practice of medicine or surgery pursuant to R.S. 45:9-1 et seq.;
. . . .
i. a registered professional nurse pursuant to P.L. 1947, c. 262 (C. 45:11-23 et seq.);
j. a health care facility as defined in section 2 of P.L. 1971, c. 136 (C. 26:2H-2);
k. a physical therapist pursuant to P.L. 1983, c. 296 (C. 45:9-37.11 et seq.).
Prior to the amendment, N.J.S.A. 2A:5326 listed only ten "licensed persons." Midwives were not included in the original or in its amendment.
Nurses and midwives are licensed pursuant to different statutes. Licensing requirements for registered professional nurses are set forth in N.J.S.A. 45:11-23 to -67. A registered professional nurse is one who "diagnos[es] and treat[s] human responses to actual or potential physical and emotional health problems, through such services as casefinding, health teaching, health counseling, and provision of care supportive to or restorative of life and well-being, and executing medical regimens as prescribed by a licensed . . . physician or dentist." N.J.S.A. 45:11-23b.
Midwife licensing requirements are specified in N.J.S.A. 45:10-1 to -22. A midwife is defined as a person "who attends a woman in childbirth as a midwife." N.J.S.A. 45:10-1. To qualify for a license as a midwife, a person must have "received a certificate or diploma from a legally incorporated school of midwifery, or maternity hospital." N.J.S.A. 45:10-3. Midwives must pass an examination "sufficient to test the scientific and practical fitness of candidates to practice midwifery." N.J.S.A. 45:10-5. Every licensed midwife is required to "procure . . . annually . . . a certificate of registration." N.J.S.A. 45:10-7. They must also "secure the immediate services of a reputable registered *146 physician whenever any abnormal signs or symptoms appear in either mother or infant." N.J.S.A 45:10-8. Only a certified nurse midwife may prescribe drugs, N.J.S.A. 45:10-18, so long as they qualify pursuant to N.J.S.A. 45:10-19.
Defendants assert that because Cahill is certified as a nurse-midwife under N.J.A.C. 13:35-2A.2, she falls within the ambit of N.J.S.A. 2A:53A-26. Defendant misreads the Administrative regulation. N.J.A.C. 13:35-2A.2 provides in pertinent part:
"Certified midwife (CM)" means a person who is not a registered nurse and who holds certification from the American College of Nurse Midwives Certification Council (ACC) or its successors.
"Certified nurse midwife (CNM)" means a person who is a registered nurse and who holds certification from the American College of Nurse Midwives (ACNM) or the ACC or their successors.
"Certified professional midwife (CPM)" means a person who holds certification from the North American Registry of Midwives (NARM) or its successor.
. . . .
"Licensee" means any person who holds a license from the Board to practice as a midwife.
"Midwife" means a person licensed by the Board as a certified midwife (CM), certified nurse midwife (CNM) or certified professional midwife (CPM).
[(Emphasis added).]
Thus, a midwife license is not specific to the type of certification the person possesses. Instead, any person possessing one of the three accepted certifications may be licensed as a midwife.
We next address the judge's decision that, as healthcare professionals, midwives are included as licensed persons notwithstanding their non-inclusion in the statutory list. There currently are conflicting Law Division decisions on the issue.[2] To resolve the issue, we turn to the applicable principles of statutory construction, which are well settled. "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280, 827 A.2d 1040 (2003)). Generally, when considering questions of statutory construction, we must "first consider[] the plain meaning of the provision at issue." Burns v. Belafsky, 166 N.J. 466, 473, 766 A.2d 1095 (2001) (citing State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997); State v. Szemple, 135 N.J. 406, 421, 640 A.2d 817 (1994); Merin v. Maglaki, 126 N.J. 430, 434, 599 A2d 1256 (1992)). "Such language should be given its ordinary meaning, absent a legislative intent to the contrary." Merin, supra, 126 N.J. at 434-35, 599 A.2d 1256. It is only when a statute is "silent or ambiguous" that we must consider the Legislature's intent in interpreting a statute. Accountemps v. Birch Tree Group, 115 N.J. 614, 622, 560 A.2d 663 (1989); see also Union County Bd. of Chosen Freeholders v. Union County Park Comm'n, 41 N.J. 333, 337, 196 A.2d 781 (1964).
Our function is not to "rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488, 795 *147 A.2d 857 (2002). It is not our function to "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment." Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230, 87 A.2d 721 (1952). When considering the legislative history, specifically an amendment to a statute, "[t]he canon of statutory construction, expressio unius est exclusio alterius  expression of one thing suggests the exclusion of another left unmentioned  sheds some light on the interpretative analysis." Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112, 853 A.2d 940 (2004).
The Legislature initially chose to list ten particular professionals to which the Affidavit of Merit requirement would apply. The list did not include midwives. Six years after enacting N.J.S.A. 2A:53A-26, the Legislature, recognizing the limitation of the statute's scope, amended the statute, naming five additional professionals as "licensed persons." The absence of midwives as "licensed persons" strongly suggests that the list contained in N.J.S.A. 2A:53A-26 is an exclusive one and implies that the omission of other licensed health providers "was intentional, not an oversight." Brodsky, supra, 181 N.J. at 112, 853 A.2d 940. Had the Legislature intended N.J.S.A. 2A:53A-26 to apply to other unspecified licensed health providers, it could easily have prefaced the licensed persons listed with the words "including but not limited to." It chose not to do so. We, therefore, conclude that licensed midwives, as well as other unspecified licensed professionals, are not required to provide an Affidavit of Merit when sued in their professional capacity.
At oral argument on appeal, plaintiff conceded, as she did before the Law Division judge, that her claim of professional negligence is limited to Cahill's actions or inactions as a midwife. As a healthcare facility, Capital is covered under N.J.S.A. 2A:53A-26j as a "licensed person" entitled to the required Affidavit of Merit. Therefore, we address the dismissal of plaintiff's complaint against Capital.
In Ferreira, supra, 178 N.J. 144, 836 A.2d 779, similar to circumstances before us, the plaintiffs' counsel obtained an Affidavit of Merit within ninety days but failed to provide it to the defendant until after the 120 days elapsed. Id. at 148, 836 A.2d 779. However, unlike the circumstances here, the defense in Ferreira waited until after it was served with the Affidavit of Merit by the plaintiffs to bring its motion to dismiss. Defendants rely on the following quote, which implicates those different circumstances, in support of its contention that the judge properly dismissed the complaint against Capital:
The rule we announce in this case will further the fundamental purpose of the Affidavit of Merit statute. In a case where the plaintiff has in hand an affidavit within the 120-day statutory period and serves the affidavit on defense counsel outside that time frame but before defense counsel files a motion to dismiss, the defendant shall not be permitted to file such a motion based on the late arrival of the affidavit. If defense counsel files a motion to dismiss after the 120-day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and extraordinary circumstances do not apply. That formulation places strong incentives on both plaintiffs' and defense counsel to act diligently.
[Id. at 154, 836 A.2d 779.]
The Ferreira Court noted that the fundamental purpose of the Affidavit of Merit Statute is "to flush out insubstantial and meritless claims that have created a burden *148 on innocent litigants and detracted from . . . many legitimate claims." Ibid. Thus, we perceive that the foregoing quoted portion of the Court's opinion was intended to forestall plaintiffs, who have difficulty in obtaining an Affidavit of Merit because their claims are either insubstantial or meritless, from taking up precious court time. In this regard, we repeat the words of Justice Albin respecting the purpose for the required case management conference:
We trust that early court intervention in the discovery process will permit the Affidavit of Merit statute to fulfill its true purpose-to bring a swift demise to frivolous lawsuits while allowing meritorious ones to have their day in court.
[Id. at 155, 836 A.2d 779.]
The Ferreira Court proposed an "accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions." Id. at 154, 836 A.2d 779. Earlier in the opinion, the Court indicated that the conference was required.
This case brings to mind the adage that an ounce of prevention is worth a pound of cure. Therefore, going forward, we will require case management conferences in the early stage of malpractice actions to ensure compliance with the discovery process, including the Affidavit of Merit statute, and to remind the parties of the sanctions that will be imposed if they do not fulfill their obligations.
[Id. at 147, 836 A.2d 779 (emphasis added).]
In Knorr v. Smeal, 178 N.J. 169, 182, 836 A.2d 794 (2003), the Court referred to its decision in Ferreira, noting that "Ferreira requires that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions." Indeed, approximately six months after the decision in Ferreira the then Administrative Director of the Courts, Judge Williams, issued the following Notice to the Bar:
The Conference of Civil Presiding Judges has determined that counsel may consent to waive the Affidavit of Merit conference required in professional malpractice cases by Ferreira . . . and Knorr . . . when the Affidavit of Merit has been provided by plaintiff and all defendants have waived any objection to its adequacy. The Supreme Court has been made aware of and concurs in that determination by the Conference.
In such instances, counsel should submit a proposed consent order prior to the scheduled Affidavit of Merit conference, with that consent order indicating that all counsel agree to waive the conference, acknowledging that the Affidavit of Merit has been provided, and stating that the defendants waive any objections to the Affidavit's adequacy.
["Waiver of Affidavit of Merit Conference," 176 N.J.L.J. 1006 (2004) (citations omitted; emphasis added).]
Contrary to defendants' contention and the motion judge's decision, Ferreira mandates a case management conference within ninety days of the filing of an answer in a professional malpractice case. Counsel's inadvertent failure to serve the Lucian Affidavit of Merit would have been discovered had the required case management conference been conducted. Accordingly, it would be unfair to expose an attorney to potential professional liability where the court did not schedule the required conference within ninety days of the defendant's answer. We do not pass on the sufficiency of the Affidavit of Merit. However, because the particular circumstances giving rise to the dismissal of plaintiff's claim against Capital would have been averted had the mandated case management conference *149 been held, we conclude that plaintiff's professional negligence cause of action should proceed against both Capital and Cahill in its, ordinary course. We need not, therefore, address plaintiff's claim of substantial compliance or extraordinary circumstances. The order of dismissal for failure to serve an Affidavit of Merit is reversed.
Reversed and remanded.
NOTES
[1] As Montreal Saunders is guardian ad litem for her daughter, we refer to her as plaintiff.
[2] Plaintiff provides two unreported Law Division decisions determining that other healthcare professions not expressly listed in N.J.S.A. 2A:53A-26 are not covered by the Affidavit of Merit requirement.