27 A.3d 202 (2011)
422 N.J. Super. 104
Joseph J. TRIARSI, as Trustee for the Joseph H. Halpin Insurance Trust, a New Jersey Trust, Plaintiff-Appellant,
v.
BSC GROUP SERVICES, LLC, a/k/a Benefit Service Company, a New Jersey LLC, and Herbert Wright, Defendants-Respondents.
DOCKET NO. A-5047-09T1
Superior Court of New Jersey, Appellate Division.
Argued February 8, 2011.
Decided July 26, 2011.
*204 Brian J. Molloy argued the cause for appellant (Wilentz, Goldman & Spitzer, attorneys; Mr. Molloy, of counsel and on the briefs; Louis A. Greenfield, Woodbridge, on the briefs).
Robert A. Berns argued the cause for respondent BSC Group Services, LLC (Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys; Mr. Berns, of counsel and on the brief; Shaun S. McGregor, Florham Park, on the brief).
Iram P. Valentin argued the cause for respondent Herbert Wright (Kaufman Dolowich Voluck & Gonzo LLP, attorneys; Mr. Valentin, of counsel and on the brief; Charles W. White, Hackensack, on the brief).
Before Judges CARCHMAN, MESSANO, and WAUGH.
The opinion of the court was delivered by
WAUGH, J.A.D.
Plaintiff Joseph Triarsi, acting as trustee of the Joseph H. Halpin Insurance Trust (Trust), appeals the order of the Law Division dismissing his suit against defendants BSC Group Services (BSC) and Herbert Wright. He also appeals the denial of his motion for reconsideration. We affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

I.
We discern the following facts and procedural history from the record on appeal.
For approximately twenty years, Halpin and a partner ran Earnings Performance Group, a business which provided consulting services to banks. In 2003, Halpin created the Trust, an irrevocable life insurance trust to support his wife and children upon his death, and appointed Triarsi to act as trustee. Halpin purchased a life insurance policy in the amount of $1,150,000, payable to the Trust upon his death. That policy was the sole asset of the Trust.
Halpin obtained the policy through BSC, an insurance broker. Wright handled the transaction for BSC, by which he was employed as an insurance agent. According to Triarsi's complaint, Wright acquired intimate knowledge of Halpin's financial affairs and assisted him in the application for the policy. Subsequently, premium notices were sent to both Halpin and Wright, but not to Triarsi. According to Triarsi, Wright had responsibility for ensuring that the premiums were paid.
*205 Triarsi asserts that "Wright assumed a role beyond that of a broker arranging for the Insured's insurance needs" because he met regularly with Halpin to review and maintain his "insurance needs" and also became familiar with Halpin's family. Triarsi alleges that because of these regular communications between Halpin and Wright, the latter knew that the policy was "critical" to Halpin's estate plan as the sole asset of the Trust. Triarsi points to the fact that Wright had "on at least one occasion" advanced the premium for the policy, and then been reimbursed by Halpin.
In 2008, Halpin's health declined and he became seriously ill. Halpin was hospitalized in November 2008 and died on December 28, 2008. His illness, according to Triarsi, caused Halpin to become "despondent and inattentive to his personal and business affairs." Triarsi contends that Wright knew that Halpin's illness was having that effect.
In November or December 2008, Triarsi discovered that the insurance policy had been cancelled. Halpin's wife subsequently found unopened letters from the insurance carrier in Halpin's mail. The documents revealed that the insurance carrier had sent a notice of intent to cancel the policy to both Halpin and Wright on February 25, 2008. In March 2008, Halpin had sent the carrier a check in the premium amount. However, the carrier returned the payment to Halpin because it had been received after the end of the grace period for renewal. Halpin, however, had never opened the letter containing the carrier's check for the returned premium, and also failed to open a letter containing instructions on procedures to reinstate the policy.
On April 3, 2009, Triarsi filed a complaint against BSC and Wright alleging: (1) breach of defendants' fiduciary duty to Halpin and Triarsi as insured and trustee, respectively; (2) breach of defendants' duty of reasonable care in performing their duties as life insurance agent and broker; and (3) breach of the special relationship between insurance agent and client in connection with life insurance policies. Triarsi alleged that Wright and BSC "regularly received copies of all notices from the insurance carrier concerning the Policy, including the notice of intent to cancel for lack of payment, notice of cancellation, and the return of the premium check along with the [reinstatement] form." Consequently, Triarsi contends that they had a duty to effectuate the renewal of the policy or its reinstatement following cancellation.
Although Triarsi's case information statement (CIS) did not list the action as one involving a claim of professional negligence, the CISs filed by both defendants designated the matter as a professional malpractice case requiring that an affidavit of merit be served pursuant to the Affidavit of Merit (AOM) statute, N.J.S.A. 2A:53A-27. However, the case management conference required by the Supreme Court to facilitate the timely service of affidavits of merit, known as a Ferreira[1] conference, was never scheduled by the court.
Triarsi declined to serve an affidavit of merit, contending that based on "consultation with experts" an affidavit was not necessary. Wright filed a motion to dismiss, which was joined by BSC. Triarsi opposed the motion, but did not file an affidavit of merit. At the hearing on the motion, Triarsi argued (1) that the AOM *206 statute did not apply to counts one and three, and (2) that, if they were found to be within the purview of the statute, the common knowledge exception applied.
The judge rejected Triarsi's arguments and dismissed the complaint with prejudice on February 16, 2010. In his oral decision, the judge held that the AOM statute applies to malpractice suits against insurance producers, such as BSC and Wright, because they are licensed by the State.[2] The judge then cited Court v. Gardner, 173 N.J. 328, 801 A.2d 1134 (2002), and held that
our Supreme Court in the Couri opinion found that it's not the label placed on the action that is pivotal but the nature of the legal inquiry. Accordingly, when presented with a tort or contract claim asserted against the professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claims underlying the factual allegation require proof of a deviation from the professional standard of care applicable to that specific profession. If such proof is required, an Affidavit of Merit is required for that claim unless some exception applies.
. . . .
This court has had the opportunity to review the complaint in its entirety and I find that in this case, the factual allegations set forth in the complaint would require proof of a deviation from the professional standard of care applicable to insurance producers.
The judge concluded that the AOM statute was applicable to all three counts of Triarsi's complaint and dismissed all of them with prejudice because Triarsi had not served an affidavit of merit.
After dismissal of the complaint, Triarsi obtained and served an affidavit of merit from Haig G. Neville, a risk management specialist and underwriter. Triarsi then filed a motion for reconsideration, along with his attorney's certification that he had consulted with Neville prior to drafting the complaint and had been advised by him at that time that there was a reasonable basis for the complaint.
At the hearing on the motion for reconsideration, Triarsi again argued that the AOM statute was inapplicable. He also made two new arguments: (1) that the court's failure to hold a Ferreira conference excused the late filing of the affidavit of merit; and (2) that the dismissal should have been without prejudice because there were "extraordinary circumstances" warranting such relief.
Following argument, the judge delivered an oral opinion denying Triarsi's motion. He held that Triarsi had improperly raised arguments on the motion for reconsideration that he had not made in connection with the original motion. The judge concluded that he had correctly dismissed Triarsi's complaint with prejudice and that he had not failed to consider any probative, competent evidence that was presented on the original motion. He rejected the recently submitted affidavit of merit, noting that it had not been served during the 120 day period following the filing of the answers, as required by the AOM statute, and, in addition, that Triarsi had waited until after the order of dismissal had been entered to obtain and submit the affidavit. He further concluded that dismissal with prejudice was appropriate because Triarsi had been aware of the requirements of the AOM statute, but declined to file an affidavit *207 because he took the position that one was not necessary. The judge held that Triarsi's "exercise of judgment" in that regard did not give rise to "extraordinary circumstances" warranting a dismissal without prejudice.
This appeal followed.

II.
On appeal, Triarsi argues that the motion judge erred in holding that an affidavit of merit was required for counts one and three of his complaint.[3] He further argues that, even if an affidavit of merit is required for all three counts, his failure to file one was excused because the court never scheduled the case management conference required by Ferreira. Finally, he argues that the dismissal should have been without prejudice because there were "extraordinary circumstances" such that the dismissal with prejudice was inequitable.
We will discuss each of those arguments in turn. In doing so, we follow the well-established principle that our review of a trial judge's conclusions of law is de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

A.
The AOM statute requires plaintiffs in malpractice actions to serve an affidavit of merit on each malpractice defendant within sixty days after the filing of an answer, but allows an extension for an additional sixty days for good cause. It provides, in pertinent part:
In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
[N.J.S.A. 2A:53A-27 (emphasis added).]
The purpose of the statute is "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." Hubbard v. Reed, 168 N.J. 387, 395, 774 A.2d 495 (2001). "[F]ailure to deliver a proper affidavit within the statutory time period requires a dismissal of the complaint with prejudice." Ferreira, supra, 178 N.J. at 146-47, 836 A.2d 779 (citing Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 242, 708 A.2d 401 (1998)).
Triarsi argues that counts one and three of the complaint do not require an affidavit of merit because they contain no allegation of a breach of professional duty. He argues, in the alternative, that, even if a breach of professional duty is alleged, the allegations "fall within a layperson's common knowledge" and therefore no affidavit of merit is required.
*208 In determining whether the AOM statute applies to a claim, our courts consider the following three factors:
(1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [] fell outside acceptable professional or occupational standards or treatment practices" (standard of care).
[Couri, supra, 173 N.J. at 334, 801 A.2d 1134 (alteration in original) (quoting N.J.S.A. 2A:53A-27).]
To determine whether claims require submission of an affidavit of merit, "courts must look to the underlying factual allegations, and not how the claim is captioned in the complaint. . . . [I]t is the nature of the proof required that controls." Walnut Advisory Corp., supra, 721 F.Supp. 2d at 315 (citing Couri, supra, 173 N.J. at 339, 341, 801 A.2d 1134). "Where the allegations do not require proof of a deviation from a professional standard of care, no affidavit is required. Cases fitting this categorization are referred to as `common knowledge' cases." Ibid. (citing Hubbard, supra, 168 N.J. at 394-95, 774 A.2d 495).
In his first count, breach of a fiduciary duty, Triarsi alleged that defendants breached their duty when "they failed to timely consult and advise the Insured and the Trustee of the fact that the insurance Policy was to be cancelled." It also alleged that defendants further breached their fiduciary duty by failing "to discuss and advise the Insured and the Trustee of the consequences of late payment of premium, in particular, the significance of available grace periods, reinstatement privileges and available options under the insurance Policy to maintain the Policy, including, but not limited to, a waiver of premium." The second count alleged that defendants "owed the Insured and the Trustee the obligation of reasonable care in the performance of the duties of a life insurance agent/broker," and that defendants "were negligent and failed to take reasonable and appropriate measures that were available and known to the Defendants to maintain and/or preserve the proceeds of the Policy."
Consequently, both counts one and two focus on defendants' failure to advise Halpin and Triarsi of the impending cancellation of the policy and how to maintain or reinstate the policy. Both legal theories are premised on defendants having a duty to do so, although the duty is referred to as a fiduciary one in count one and a professional one in count two. However, as a matter of law, there is actually a single duty and it is essentially one sounding in negligence.
The import of the fiduciary relationship between the professional and the client is no more evident than in the area of insurance coverage. Insurance intermediaries in this State must act in a fiduciary capacity to the client "`[b]ecause of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies.'" Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J.Super. 255, 260, 523 A.2d 665 (App.Div.1987) (quoting Sobotor v. Prudential Prop. & Cas. Ins. Co., 200 N.J.Super. 333, 341, 491 A.2d 737 (App.Div.1984)); see also N.J.A.C. 11:17A-4.10 ("An insurance producer acts in a fiduciary capacity in the conduct of his or her insurance business."). The fiduciary relationship gives rise to a duty owed by the broker to the client "to exercise good faith and reasonable skill in advising insureds." Weinisch v. Sawyer, *209 123 N.J. 333, 340, 587 A.2d 615 (1991).
Accordingly, an insurance broker who agrees to procure a specific insurance policy for another but fails to do so may be liable for damages resulting from such negligence. Rider v. Lynch, 42 N.J. 465, 476, 201 A.2d 561 (1964). Liability resulting from the negligent procurement of insurance is premised on the theory that a broker "ordinarily invites [clients] to rely upon his expertise in procuring insurance that best suits their requirements." Id. at 477, 201 A.2d 561. The concept is essentially one of professional malpractice. A broker engaged to obtain insurance must exercise reasonable skill and "is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected." Id. at 476, 201 A.2d 561. Furthermore, if a broker "neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby." Ibid.; see also Restatement (Second) of Agency, § 401 (1957) ("An agent is subject to liability for loss caused to the principal by any breach of duty.").
[Aden v. Fortsh, 169 N.J. 64, 78-79, 776 A.2d 792 (2001) (alteration in original) (emphasis added).]
In light of the direct communication between the carrier and its insured with respect to premium payments, cancellation, and reinstatement, we conclude that expert testimony would be required to establish that a broker and its agent have a duty with respect to the payment of renewal premiums, avoidance of cancellation, and reinstatement in the event of cancellation. We do not agree with Triarsi's assertion that the existence of that duty is within the common knowledge of lay people.[4]
In count three, Triarsi claims that defendants breached a "special relationship" between Wright, as an insurance agent, and Halpin and Triarsi as clients. This "special relationship" was delineated in Glezerman v. Columbian Mutual Life Insurance Co., 944 F.2d 146, 150-51 (3d Cir.1991) (citations omitted):
While it is true that specialized knowledge is part of the rationale for imposing a duty on insurance brokers, New Jersey caselaw does not support the conclusion that professional training is the primary basis for such a duty.
An insurance agent may assume duties in addition to those normally associated with the agent-insured relationship, and New Jersey courts regularly review the record for evidence of greater responsibilities. The prior conduct of and length of relationship between the parties can create or negate the existence and scope of the duty owed to the insured.
As these judicial investigations into the parties' relationship indicate, the client must establish "something more" than a broker-client relationship in order to impose a heightened standard of care on a broker. See Avery [v. Arthur E. Armitage Agency, 242 N.J.Super. 293, 300, 576 A.2d 907 (App.Div.1990)]. . .; see also Sobotor [v. Prudential Prop. & Cas. Ins. Co., 200 N.J.Super. 333, 338, 491 A.2d 737 (App.Div.1984)] ("[A] duty arises when there is a special *210 relationship between the insurance agent and the client which indicates reliance by the client on the agent."). As discussed in Avery, "a broker's liability has turned on whether the broker's conduct invited reliance, or the client's conduct exhibited or justified a claim of reliance." [Id. at 301, 576 A.2d 907]; cf. Walker [v. Atl. Chrysler Plymouth, Inc., 216 N.J.Super. 255, 259, 523 A.2d 665 (App.Div.1987)] (holding that an insured's demonstrated reliance on a broker's specialized professional knowledge may permit a jury to find that the broker had a duty to inform his client of alternative coverage).
Triarsi's claim in count three is that defendants breached such a "special relationship" to Halpin and Triarsi. The duty owed by defendants under this relationship is not one based on the insurance agent's professional training or standards. Glezerman, supra, 944 F.2d at 150. Instead, the basis of the claim is that the insurance agent "assume[d] duties in addition to those normally associated with the agent-insured relationship" by conduct that invited plaintiff's detrimental reliance. Ibid. This claim does "not require proof of a deviation from a professional standard of care," Walnut Advisory Corp., supra, 721 F.Supp.2d at 315, but instead depends on proof of the parties' conduct. Glezerman, supra, 944 F.2d at 151. A trial judge can fashion a jury charge based on the case law concerning the special relationship without the necessity of expert opinion.
Because the claim in count three does not require expert testimony to establish the existence of a professional standard of care pertaining to insurance professionals, we conclude that the motion judge erred in finding the AOM statute applicable to count three. Consequently, we reverse the dismissal of count three and remand for further proceedings consistent with this opinion.

B.
Triarsi next argues that, even if an affidavit of merit was required, his failure to file one was excused by the Law Division's failure to schedule a Ferreira conference. He characterizes that failure as an "extraordinary circumstance" that warranted dismissal without prejudice and subsequent reinstatement of the complaint. We disagree.
In Ferreira, supra, 178 N.J. at 148, 836 A.2d 779, the plaintiff had conferred with an expert several months prior to filing his medical malpractice complaint. Defendants filed their answer and requested that an affidavit of merit be supplied. Within ten days of that filing, the plaintiff had received the affidavit of merit from his expert. Because the answer had been misfiled in his office, the plaintiff did not review it until almost six months later. He then served the affidavit of merit, but service was outside the 120 day extended statutory period. Ibid.
The defendants filed a motion to dismiss, the motion judge granted the motion, and we affirmed. Ibid. In reversing, the Supreme Court concluded that, because the plaintiff's attorney had actually obtained the affidavit of merit within ten days of the filing of the answer, the AOM statute's legislative purpose had been satisfied, id. at 152, 836 A.2d 779, inasmuch as the "malpractice action was verified by an expert as meritorious within 120 days of the filing of defendants' answer." Id. at 153, 836 A.2d 779. The Court held that "where the plaintiff has in hand an affidavit within the 120-day statutory period and serves the affidavit on defense counsel outside that time frame but before defense counsel files a motion to dismiss," the dismissal based on the late service of the *211 affidavit should not be granted. Id. at 154, 836 A.2d 779.
Nevertheless, the Court further held:
If defense counsel files a motion to dismiss after the 120-day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and extraordinary circumstances do not apply. That formulation places strong incentives on both plaintiffs' and defense counsel to act diligently.
[Ibid. (emphasis added).]
Attorney inadvertence, however, does not constitute extraordinary circumstances warranting dismissal without prejudice. Id. at 152, 836 A.2d 779 (citing Palanque v. Lambert-Woolley, 168 N.J. 398, 405, 774 A.2d 501 (2001)).
To avoid such situations, the Court required "that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions." Id. at 154, 836 A.2d 779. The conference was intended to allow a managing judge to "address all discovery issues, including whether an affidavit of merit has been served on defendant.... If no affidavit has been served, the court will remind the parties of their obligations under the statute and case law." Id. at 155, 836 A.2d 779.
Triarsi relies on Saunders ex. rel. Saunders v. Capital Health System, 398 N.J.Super. 500, 942 A.2d 142 (App.Div. 2008), in support of his argument that the failure to hold a Ferreira conference constitutes an "extraordinary circumstance." In Saunders, the plaintiffs were permitted to proceed with their suit because the trial judge neglected to hold a Ferreira conference within ninety days of the defendant's answer. Id. at 510-11, 942 A.2d 142.
The motion judge here correctly determined that Saunders is distinguishable. In contrast to Triarsi, the plaintiff in Saunders had obtained an affidavit of merit in January 2006 and filed a malpractice complaint in April 2006, but inadvertently neglected to serve the affidavit on the defendants. Id. at 503-04, 942 A.2d 142. He then served the affidavit after the defendants had filed a motion to dismiss. His complaint was dismissed with prejudice. Ibid. We reversed, holding that it would be unfair to put the attorney in jeopardy of professional negligence because he "inadvertently" failed to send out the affidavit of merit he had already obtained, finding that the problem would have been averted had the Ferreira conference been scheduled. Id. at 510, 942 A.2d 142.
Here, Triarsi's attorney has candidly admitted that, unlike "[c]ounsel's inadvertent failure to serve" an affidavit of merit in Saunders, supra, 398 N.J.Super. at 510, 942 A.2d 142, "this wasn't ... inadvertence not to have an Affidavit of Merit. It was a judgment call...." This is not a case of an affidavit of merit sitting in the file waiting for the conference to be scheduled.
Triarsi also relies on Paragon Contractors, Inc. v. Peachtree Condominium Ass'n, 202 N.J. 415, 997 A.2d 982 (2010), which was decided after his motion for reconsideration was denied. The motion judge had considered our opinion in Paragon, 406 N.J.Super. 568, 968 A.2d 752 (App.Div.2009), rev'd, 202 N.J. 415, 997 A.2d 982 (2010). In Paragon, the defendant filed an answer along with a certification requesting that the track assignment be changed to reflect that the matter was a professional liability matter. The defendant also filed a CIS identifying the claim as a malpractice action. Paragon, 406 N.J.Super. at 576, 968 A.2d 752. A Ferreira conference was not held, and plaintiff *212 failed to serve an affidavit of merit on defendant within 120 days of the filing of the answer. Ibid. Defendants filed a motion to dismiss based on plaintiff's failure to comply with the AOM statute. Ibid.
Plaintiff's counsel opposed the motion, claiming she "spoke with someone in the civil case management office `regarding requirements pertaining to an Affidavit of Merit,'" and was "advised by the case manager's office `that an Affidavit would need to be filed prior to a [Ferreira] Conference, which had not yet been scheduled,' and that `if the Affidavit was not filed by the date of such a conference, then one could be filed with consent of the parties.'" Ibid. Counsel also claimed that she "`acted with diligence to communicate with the [c]ourt and ascertain as to whether and when an affidavit of merit would be required.'" Id. at 577, 968 A.2d 752. Further, plaintiff served an affidavit of merit three weeks after the filing of the motion to dismiss and after the 120 day statutory period, but before the hearing on the motion. Ibid. The trial judge dismissed the plaintiff's complaint and later denied a motion for reconsideration. Ibid.
We affirmed, finding plaintiff did not substantially comply with the AOM statute and that "extraordinary circumstances" did not exist warranting reinstatement of the complaint. Id. at 579-80, 968 A.2d 752. On appeal, the Supreme Court reinstated the complaint. Paragon, supra, 202 N.J. at 419, 997 A.2d 982.
Triarsi argues that reinstatement is similarly warranted here because, like Paragon, a Ferreira conference was not held within ninety days of the filing of the answer. Although the motion judge noted that "[t]he facts in this case are more akin to the facts in Paragon," he further observed that the present case was not one of "a procedural slip-up in the filing or service or a case of a curable technical deficiency." Instead, the judge found that "[t]his is a case where the plaintiff, ... aware of the Affidavit of Merit requirements and its time frames, ... concluded an Affidavit of Merit was not necessary."
Although the Supreme Court reversed the Appellate Division in Paragon and reinstated the complaint on the grounds that "extraordinary circumstances" existed, Paragon, supra, 202 N.J. at 425-26, 997 A.2d 982, we do not read the Court's opinion as requiring reinstatement here because of the significantly different reasons for the failure to serve the affidavit of merit, i.e., the fact that Triarsi's attorney made a conscious decision, "a judgment call," not to serve an affidavit of merit. In addition, Triarsi waited until after his complaint had been dismissed to serve the affidavit, rather producing one in response to the motion itself.
Triarsi further argues that, because there was "confusion" about whether he was required to serve an affidavit of merit, which confusion he asserts would have been remedied by a Ferreira conference, there were "extraordinary circumstances" warranting that the dismissal be without prejudice. Ferreira, supra, 178 N.J. at 151, 836 A.2d 779.
Triarsi relies on the Supreme Court's decision in Paragon to support his argument. In reversing our Paragon opinion, the Court found that there was a lack of unanimity in the Appellate Division regarding whether the time to file an affidavit of merit was tolled pending the holding of a Ferreira conference. Paragon, supra, 202 N.J. at 425, 997 A.2d 982. The Court held that the failure to hold the conference does not toll the time limits of the AOM statute. Id. at 424, 997 A.2d 982. However, the Court concluded that situation "counsel[ed] lenience" in the limited circumstances of that case. Id. at 425, 997 A.2d 982. The Court noted that because of the conflicting case law as to the "import of the failure to hold a Ferreira conference," *213 members of the plaintiffs' bar "may have assumed that the absence of the conference provided a safe harbor from the Affidavit of Merit statute's requirements." Id. at 425, 997 A.2d 982. The Court concluded, in the context of that case, that the resulting confusion
constitute[d] an extraordinary circumstance that may have caused counsel to slumber when he should have acted. Because the Affidavit of Merit statute is not intended as a trap for the unwary, we will not permit it to be used in these circumstances to dismiss a claim before its merits have been adjudged.
[Id. at 425-26, 997 A.2d 982.]
The Court also observed, however, that "it is equally true that parties are presumed to know the law and are obliged to follow it." Id. at 424, 997 A.2d 982 (citations omitted).
Here, there was no confusion about whether the time to serve the affidavit of merit was tolled pending a Ferreira conference. Triarsi does not assert that he was waiting for the conference to be scheduled before obtaining and serving his affidavit of merit. Instead, his attorney concluded that no affidavit of merit was required.
We are constrained to conclude that this is not a case in which the "principles of equity and the essential goal of the statuteto eliminate frivolous lawsuits" would be advanced by reinstating the complaint. Ferreira, supra, 178 N.J. at 153, 836 A.2d 779.
In summary, we reverse the motion judge's dismissal of count three of the complaint and order its reinstatement. We affirm the dismissal as to counts one and two with prejudice.
Affirmed in part, reversed in part.
NOTES
[1] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154, 836 A.2d 779 (2003). In Ferreira, the Court mandated that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice suits.
[2] The AOM statute is generally applicable to insurance brokers and agents because they must be licensed in New Jersey. Syndicate 1245 at Lloyd's v. Walnut Advisory Corp., 721 F.Supp.2d 307, 316 (D.N.J.2010).
[3] A concession that an affidavit of merit is required for the second count is implicit in Triarsi's argument that it is not required for the other two.
[4] If the notices had been sent only to BSC and Wright, the result might be different because the existence of the duty might be considered self-evident.