**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3916-21

SKORR PRODUCTS, LLC, and
ROBERT SKVORECZ,

     Plaintiffs-Appellants,

v.

BOLLINGER, INC., and ARTHUR
J. GALLAGHER & CO.,
individually and as successor in
interest to BOLLINGER, INC.,

     Defendants-Respondents.

_____

Submitted February 7, 2024 – Decided April 30, 2024

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7149-17.

Goodgold West & Bennett, LLC, attorneys for appellants (David Eric Maitlin, of counsel and on the briefs).

White and Williams, LLP, attorneys for respondents (Christopher P. Leise and Marc L. Penchansky, on the brief).

PER CURIAM

Plaintiffs appeal from the March 4 and July 28, 2022 orders granting defendants' motion for summary judgment and denying their motion for reconsideration. We affirm.

I.

Plaintiff Skorr Products, LLC made and sold chafing dish holders and stands for buffet dishes, used by catering companies and restaurants. Plaintiff Robert Skvorecz owned Skorr Products. On February 5, 2014, a fire at plaintiffs' manufacturing facility caused extensive damage to its machinery, commercial and personal property, and interrupted Skorr Products's ability to conduct business.

Plaintiffs were insured with Franklin Mutual Insurance Company (FMI) under a policy that provided $1,371,900 in coverage for business personal property loss and $500,000 for loss of business income. After the fire, plaintiffs claimed $6,000,000 for loss of business property and $2,000,000 in business interruption loss. FMI made loss payments to Skorr Products under its policy in excess of $1,500,000.

In 2017, plaintiffs instituted suit against their insurance brokers, defendants Bollinger, Inc. (Bollinger) and Arthur J. Gallagher & Co.

2

(Gallagher), as the successor in interest to Bollinger,[1] alleging defendants: breached their duty to meet with plaintiffs and review their insurance, breached duties imposed on them by the parties' special relationship, and breached their duty to advise plaintiffs and to obtain for plaintiffs increased coverage. Plaintiffs alleged Gallagher was liable under a theory of successor tort liability.

We provide some background information to place plaintiffs' theories of liability into context. In the mid to late 1990s, the Rork Insurance Agency, owned by George Rork, began providing insurance brokerage services to Skorr Products and to Skvorecz personally. According to Rork, he met with Skvorecz two to three times a year to maintain their business and personal relationship.[2] Rork also delivered the insurance policies to Skvorecz, although Skvorecz did not recall that. Skvorecz also stated he did not review the policies.

After Bollinger acquired Rork Agency in 2005, Rork worked at Bollinger and continued to service Skorr Products's account for a period of time. Melissa Chung also worked at Rork Agency and then became employed at Bollinger after the acquisition. In 2007, Chung became responsible for Skorr Products's

---

[1] Gallagher acquired Bollinger in 2013.

[2] Rork and Skvorecz became personal friends, attending the U.S. Open, golfing, and visiting one another in Florida.

A-3916-21

account. She advised Skvorecz she was taking over the account and invited him to contact her with any questions about the policy coverage or if he wished to make changes to the coverage limits. Rork retired in 2008.

Bollinger mailed renewal questionnaires to its clients each year shortly before their new policies were to take effect. The clients were instructed to complete the questionnaires and return them to Bollinger. Specific questions asked whether the client needed to make any changes to its business personal property limits and whether the client had purchased any new equipment in the past year. On the bottom of the questionnaire, it stated in bold face and underlined: "By not returning this questionnaire or calling us to provide changes for updates, you acknowledge no changes or adjustments are needed to your existing insurance program and do not desire Bollinger to pursue additional or optional coverage quotes on your behalf." (boldface and emphasis omitted).

In January 2013, Bollinger sent Skvorecz a questionnaire regarding the renewal of the business insurance policy that became effective on March 4, 2013. According to Chung, neither Skvorecz nor any representative of Skorr Products ever returned a completed questionnaire during the 2005-2013 time period. In February 2013, Bollinger sent Skvorecz the insurance policy for Skorr Products for the period of March 4, 2013 to March 4, 2014.

A-3916-21

Skvorecz testified during his deposition that he held degrees in business and engineering. He stated he made all the business decisions for Skorr Products, and had complete authority for running the business, including the procurement of insurance coverage. Skvorecz did not dispute that he received insurance policies from Bollinger, but he stated he never reviewed the policies nor questioned the coverage.

From the time Rork retired in 2008 until 2013, Skvorecz did not contact Bollinger although he acknowledged its representatives were available to answer any questions. Skvorecz explained he did not need help valuing his equipment since he had the necessary information necessary to do it himself. He agreed that Chung was not in a position to value his equipment. Further, Skvorecz stated he valued his inventory himself for tax purposes.

In November 2013, Skvorecz called Rork about insuring the transport of a machine he had purchased in Michigan.[3] During the call, Skvorecz mentioned that no one from Bollinger had ever contacted him. After their conversation, Rork contacted Chung, who called Skvorecz on November 15. According to Chung, after discussing the cost of insuring the transportation of the new

---

[3] The machine had not been delivered to the Skorr Products facility at the time of the fire.

A-3916-21

machine, Skvorecz "mentioned" the equipment at his facility might be underinsured and requested that FMI inspect it. The same day, Chung emailed a contact at FMI regarding Skvorecz's request. When Chung heard back from FMI, she emailed Skvorecz asking for a contact person for the inspection. Skvorecz did not respond with the name of a contact person.

Edward Prol, an FMI employee, inspected Skorr Products's machinery on January 21, 2014. In his report to the underwriting department, Prol stated, "It was very hard to determine a value, knowing this is a one of a kind . . . operation, with machinery used specific[ally] for the operations."

On January 29, 2014, Chung emailed Skvorecz that FMI was unable to value his machinery because it was custom made. She informed him he could "either leave the value as is or increase the amount if you feel you are underinsured." Chung advised Skorecz the policy contained a $163,000 equipment value.[4] Skvorecz did not respond but emailed Chung on February 6, 2014, informing her of the fire the night before. This lawsuit ensued.

---

[4] According to plaintiffs, the reference to $163,000 was a special endorsement that covered a truck and two pieces of equipment, not the production machinery.

A-3916-21

II.

Following the close of discovery, and with a pending trial date, defendants moved for summary judgment, arguing they did not have a special relationship with plaintiffs and, therefore, plaintiffs could not establish their breach of fiduciary duty claim. In opposing the motion, plaintiffs included an expert report from a former owner of an insurance company.[5] Plaintiffs contended they had a special relationship with Rork and that Chung's communication with Skvorecz regarding the valuation of his equipment continued that special relationship.

On March 4, 2022, Judge Lisa M. Adubato issued a well-reasoned written decision and accompanying order granting defendants' motion and dismissing plaintiffs' claims with prejudice. The judge relied on the established law under Wang v. Allstate Insurance Co., 125 N.J. 2, 15 (1991), in stating an insurance carrier and its agents do not have a common law duty to advise its insureds regarding the potential need for higher policy limits upon renewal of a policy unless there is a special relationship. Moreover, Chung had advised Skvorecz before the fire that he could increase his insurance limits if he wished to do so, and he had not responded to the correspondence. Absent a special relationship,

---

[5] Plaintiffs also moved for a fifth extension of discovery. Following the grant of summary judgment, the trial court denied the extension motion as moot.

the judge found defendants did not owe plaintiffs a duty to recommend higher policy limits to the existing insurance coverage.

Judge Adubato then considered whether plaintiffs had demonstrated the existence of a special relationship, guided by Wang and Triarsi v. BSC Group Services, LLC, 422 N.J. Super. 104, 116-17 (App. Div. 2011). The judge found that Rork's working relationship with Skvorecz did not comprise "actions or events that fall outside the typical broker-client relationship." While Rork made personal visits to Skvorecz to deliver paperwork and discuss the business, the judge found Skvorecz conceded he was "best situated to make evaluations regarding the value of his machinery." The judge found Rork did not invite detrimental reliance and Skvorecz did not rely on Rork to his detriment, as required to establish a special relationship under Triarsi.

Furthermore, the judge noted that even if Rork's previous business practices created a special relationship, it ended when he stopped servicing the account in 2007 prior to his retirement the following year. Bollinger did not have an obligation to continue the same business practices that Rork did. Moreover, for the six years between Rork's retirement and the fire, Bollinger and Chung communicated with plaintiffs through written correspondence and the mailed yearly renewal forms. Plaintiffs accepted that business practice.

8

Judge Adubato concluded: "The duration of the relationship between [Rork Agency] and then Bollinger, and the conduct of the parties does not weigh in favor of finding a special relationship between the broker and client here. Instead, the consistent practices of both [Rork Agency] and Bollinger were those of typical broker-client relationships."

The judge also addressed plaintiffs' contention that a special relationship was created when Skvorecz requested Chung arrange an inspection of his equipment. The judge found that Chung agreed to reach out to FMI and she did so. When FMI determined it could not value the equipment, Chung asked Skvorecz if he wanted to increase his limits. Skvorecz did not respond. Judge Adubato concluded there was no evidence that plaintiffs detrimentally relied on Chung to assess the equipment value or increase coverage limits, reiterating that Skvorecz had valued his equipment in the past and was in the best position to do so. Moreover, Skvorecz had the opportunity to increase the insurance coverage limits each year when Bollinger sent the renewal notice. The judge concluded the single contact with Chung did not establish a special relationship. Therefore, plaintiffs could not support their claims of a breach of fiduciary duty.

A-3916-21

Plaintiffs' subsequent motion for reconsideration was denied. The judge found plaintiffs had presented nothing more than a disagreement with the order granting summary judgment.

III.

We "review[] the grant of a motion for summary judgment de novo, applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A motion for summary judgment should be granted if "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment . . . as a matter of law." R. 4:46-2(c). Viewing the evidence "in the light most favorable to the non-moving party," a court must "'determine whether there is a genuine issue for trial.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Our review of whether a defendant owes a plaintiff a duty is de novo because it is an issue of law. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019).

We first address plaintiffs' argument that defendants breached the fiduciary duty of care owed to plaintiffs because they did not provide the same service as Rork did when he was handling the account. Plaintiffs contend defendants had an obligation to "inquire" about the adequacy of their insurance

A-3916-21

coverage, instead of only mailing renewal questionnaires. They further assert that when Chung arranged for an inspection of plaintiffs' machinery, she was obligated to value the machinery, which she failed to do. In addition, plaintiffs contend Chung should have informed plaintiffs their business interruption coverage was insufficient.

An insurance broker has a fiduciary duty to "their clients, to whom they owe a duty to exercise reasonable skill and good faith." Harbor Commuter Serv., Inc. v. Frenkel & Co., 401 N.J. Super. 354, 367 (App. Div. 2008). However, unless an insurance broker and their client have a special relationship, "there is no common law duty . . . to advise an insured concerning the possible need for higher policy limits upon renewal of the policy." Wang, 125 N.J. at 11-12, 15.

An insurance broker can assume a duty of care towards their client if they have a special relationship such that the client relies on them. Triarsi, 422 N.J. Super. at 116-17. To determine whether there is a special relationship, the court will examine the length of the insurance broker and client's relationship, their prior conduct, and whether there was "an inquiry or request by the insured or a specific representation by the . . . broker." Id. at 116; Wang, 125 N.J. at 18. However, "the client must establish '"something more"' than a broker-client relationship in order to impose a heightened standard of care on [the] broker."

11

Triarsi, 422 N.J. Super. at 117 (quoting Glezerman v. Columbian Mut. Life Ins. Co., 944 F.2d 146, 151 (3d Cir. 1991)).  The plaintiff must prove "the insurance [broker] 'assume[d] duties in addition to those normally associated with the [broker]-insured relationship' by conduct that invited plaintiff's detrimental reliance."  Ibid. (second alteration in original) (quoting Glezerman, 944 F.2d at 150).

Plaintiffs have not demonstrated they had a special relationship with Rork because their communications and actions did "not fall outside the typical broker-client relationship" and did not invite Skvorecz to detrimentally rely on Rork.  Neither individual stated that Rork recommended a different level of insurance coverage or that Rork ever valued plaintiffs' machinery and equipment for insurance purposes.  To the contrary, Skvorecz acknowledged he did not need help valuing his equipment to determine if he was underinsured as he had all the necessary information to do it himself.  Rork confirmed he did not value the machinery.

Rork testified that his level of customer service with Skvorecz was his "standard practice."  Neither he nor Skvorecz stated that Rork recommended or chose specific coverage limits during their meetings.  The evidence reflects Rork did not "assume[] duties in addition to those normally associated with the

12

[broker]-insured relationship" or induce Skvorecz to detrimentally rely on him. Ibid. (quoting Glezerman, 944 F.2d at 150).

Moreover, as Judge Adubato noted, even if Rork and Skvorecz did have a special relationship, it ended when Rork retired. Although defendants handled their business with their clients differently than Rork had, they had no obligation to continue Rork's practices. Plaintiffs have not demonstrated defendants assumed additional duties outside of the normal broker-insured relationship or induced plaintiffs' detrimental reliance by sending out annual renewal questionnaires. As the judge stated, the provision of annual renewal forms is a "typical" practice of "broker-client relationships."

Lacking a special relationship, defendants did not have a duty to advise plaintiffs of the need to change their insurance coverage. Notwithstanding that conclusion, defendants informed plaintiffs they could increase their insurance coverage if they wanted to. This was consistent with Rork Agency's practices, who did not value clients' equipment, but would assist clients in valuing it. Contrary to plaintiffs' contentions, Chung did not agree to value plaintiffs' machinery; she only agreed to arrange an inspection of plaintiffs' machinery—which she did.

Bollinger's annual renewal questionnaires asked Skvorecz if he had obtained any new equipment and if he wanted to make any changes to his business personal property coverage. Skvorecz did not return any of the completed questionnaires and did not contact Chung to ask any questions he may have had about his insurance, despite acknowledging her availability for that purpose.

Plaintiffs also assert the trial court erred in failing to properly consider their expert report, which discussed the standard of care owed by defendants to plaintiffs and the breach of it.

We find no merit in this argument. First, the report was untimely as discovery had ended. In addition, it was improperly served as an attachment to opposition to the summary judgment motion, rather than as an amendment to interrogatories as required under Rule 4:17-7.

Nevertheless, the report was discussed during the oral argument on the summary judgment motion. In addition, the judge referred to it in her oral decision denying reconsideration. Moreover, whether there was a special relationship was a legal determination solely within the court's province. See Wang, 125 N.J. at 15.

A-3916-21

We similarly discern plaintiffs' additional arguments that the trial judge erred in denying their motion for reconsideration to be without merit. They have not presented any evidence that the court's decision was "palpably incorrect or irrational" or that the judge "did not . . . appreciate the significance of probative, competent evidence." Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Plaintiffs' dissatisfaction with the court's decision is not a basis for reconsideration. See Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3916-21